produced by the plaintiff was not ready and willing to take upon the terms proposed to the plaintiff. These encroachments would not have been a good ground for rejecting the title, if there were not a special agreement to that effect.

Judgment reversed, and judgment directed for the defendant dismissing the complaint, with costs in the court below and the costs of this appeal. All concur.

---

(118 App. Div. 155)

### FERRARI v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

1. EVIDENCE—PRESUMPTIONS—ATTEMPTED BRIBERY OF WITNESS.

   The act of a party in attempting to bribe a witness of the adverse party affords no presumption against the party's evidence on the question testified to by the witness, and does not have the effect of gaining a more ready admission to the evidence of the adverse party on that question, but is to be considered in weighing the evidence.

2. SAME—FAILURE OF PARTY TO CALL WITNESSES.

   The failure of a party to produce a witness within his reach raises no unfavorable presumption against him, but the jury may consider that, if called, the testimony of the absent witness would not sustain the party's contention.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 97.]

Appeal from Trial Term, New York County.

Action by Joseph Ferrari against the Interurban Street Railway Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and LAUGHLIN, INGRAHAM, HOUGHTON, and LAMBERT, JJ.

Charles F. Brown, for appellant.
Ferdinand E. M. Bullowa, for respondent.

INGRAHAM, J. The only questions which I deem at all material upon this appeal arise upon exceptions to the charge of the learned trial judge.

Upon the trial a witness named Julia Collins was called for the plaintiff. She testified that one Curry, who was an inspector in the employ of the defendant, and whose duty it was to see witnesses and obtain from them a statement of what they could testify to in reference to accidents, came to the witness and asked her if she would give him a statement, to which she replied that she would; that she gave him a statement with which he was not satisfied, saying it was not good for the company, and wanted a longer statement; that the witness told the inspector that that was all she knew; that he then asked her if she would go for the company, and she said, "No"; that he said he would fix her up if the company should finally win; she said, "No, no; she would not; no"; that this conversation was three or four months after the accident; that, although the witness had been examined at a former trial prior to which she had stated these facts to the plaintiff's counsel, she was not examined about them. Curry was called as a witness for the defendant, and denied this whole conversa-

tion. He stated that he called on the witness and asked her to give him a statement; that she gave him a statement, but that the rest of her testimony was untrue, and that he had no such conversation with her; that he saw her in company with a man named Whalen, one of the company's investigators; that he simply asked her for a statement, which she gave him, and which he turned over to the attorneys for the defendant; that he did not ask her for another statement and never went back to see her; that he did not say the statement was good, bad, or indifferent for the company, made no comment at all, and asked her no further questions.

In commenting upon this testimony, the learned trial judge stated that:

"Curry has testified, in substance, that after he had obtained a statement from his witness he said that 'it was not a sufficiently long statement to be of any use to the company, and that, if she would make them a further and longer statement'—I don't understand that she claimed that he asked her to state any specific thing, or to deny that she had seen what she claimed to have seen—that the company would 'fix it up if the company should finally win.' Curry denies this, and it is for you to say, as I have already stated, first, whether he used this language or not; and, secondly, if he did, whether there was in it by any fair inference, judging from the words themselves and the circumstances, any suggestion on his part of bribery to induce her to withhold her testimony from the plaintiff or to give a different version of it for the defendant. It has been stated by the highest court in this state that where it appears that on one side there had been forgery or fraud in some material parts of the evidence, and they are discovered to be the contrivance of a party to the proceeding, it affords the presumption against the whole of the evidence on that side of the question, and has the effect of gaining a more ready admission to the evidence of the other party. It is not conclusive even when believed by the jury, because a party may think he has a bad case, when, in fact, he has a good one, but it tends to discredit his witnesses and to cast doubt upon his position."

To this charge the counsel for the defendant excepted.

This charge was taken from 1 Phillips on Evidence (C. & H. Notes, 627), which was quoted by the Court of Appeals in the case referred to by the learned trial court (Nowack v. Met. St. Ry., 166 N. Y. 433, 60 N. E. 32, 54 L. R. A. 592, 82 Am. St. Rep. 691); but I think that this quotation, without stating the qualification in the opinion, was quite misleading. What the court said was that:

"Evidence tending to show that a party to an action tried to bribe a witness to give false testimony in his favor, although collateral to the issues, is competent as an admission by acts and conduct that his case is weak and his evidence dishonest. It is somewhat like an attempt by a prisoner to escape before trial, or to prove a false alibi, or by a merchant to make way with his books of account, except that it goes farther than some of these instances; for, in addition to reflecting on the case, it reflects upon the evidence on that side of the controversy. 'Where it appears that on one side there has been forgery or fraud in some material parts of the evidence, and they are discovered to be the contrivance of a party to the proceeding, it affords a presumption against the whole of the evidence on that side of the question, and has the effect of gaining a more ready admission to the evidence of the other party.' 1 Phillips on Evidence (C. & H. Notes) 627. It is not conclusive, even when believed by the jury, because a party may think he has a bad case when in fact he has a good one, but it tends to discredit his witnesses and to cast doubt upon his position. It is for the consideration of the jury, after ample opportunity for explanation and denial, under proper instructions to prevent them from giving undue attention to the collateral matter to the detriment of the main issue."

The guarded language here used shows, I think, the limitation as to the effect of such testimony. Assuming in this case that the effect of this statement of the inspector for the defendant was an attempt to bribe or improperly influence the witness, the jury should have been carefully instructed that they should give to such a statement of purely collateral matter such effect only as the law gives it. It is said in the Nowack Case, supra, that:

"Such evidence is for the consideration of the jury, * * * under proper instructions to prevent them from giving undue attention to the collateral matter to the detriment of the main issue."

The word "presumption" has a definite meaning, and such evidence never creates a presumption. It is simply a circumstance to be considered by the jury in determining the weight of the evidence. To "presume" is defined by Webster as "to assume" to be true, or entitled to belief without examination or proof; and a "presumption" is the act of presuming, but the Court of Appeals held the effect of such an attempt to be like an attempt of a prisoner to escape before trial, or to prove a false alibi, or of a merchant to make way with his books of account, except that, in addition, it reflects upon the evidence on that side of the controversy. I think the mere fact that a prisoner attempted to escape before trial would not afford a presumption that he was guilty, or that alone justify a jury in presuming his guilt. It is only a fact that the jury is entitled to consider in weighing the evidence, and which creates no presumption either in favor of or against the prisoner.

The other question presented is in relation to the failure of the defendant to produce Whalen whom Curry, the defendant's inspector, testified was present at his interview with the witness Collins as a witness. Curry testified that he went to see her "in company with Mr. Whalen, one of the investigators." In relation to the failure to call Whalen, counsel for the defendant asked the court to charge that there was no evidence that the testimony of the absent investigator who was with Curry would be otherwise than cumulative evidence to that already given, and to that request the court seems to have acquiesced. Counsel for the defendant then asked the court to charge that the jury could draw no adverse inference against the defendant because defendant did not produce a witness whose evidence would merely be cumulative to that already given. This the court declined to do, saying:

"I will charge this, gentlemen: The rule is that where a party has within his control, or under his control, evidence which he might produce, and which is material to the issue, and he has neglected to do it, it raises an unfavorable presumption as to him."

To this charge the defendant excepted.

The learned trial court here used the same word "presumption" that had been used in relation to the act of the investigator to which attention has been called, but it is clear that there is no presumption against a party for failing to call a witness, even though he was able to call him, and did not do so. The jury might consider that, if called, the testimony of the absent witness would not sustain the defendant's

contention of the occurrence as to which he could testify, but that created no presumption against the defendant.

It appears in the record that, in summing up, counsel for the plaintiff commented upon the failure of counsel for the defendant to call Whalen as a witness, stating to the jury that it was a rule of law that he who fails to produce a witness who would know of the circumstances which are being testified to the presumption is against him, and the jury may take that presumption and call for the application of the rule which shows a presumption against this defendant because of his failure to produce the other investigator or notary public. Counsel for the plaintiff also called for the application of that principle of law for the reason that the defendant failed to produce the passengers in the car. This claim by the plaintiff's counsel as to the effect of failing to call these witnesses sustained by the court was not justified by the rule.

There was a sharp question of fact presented as to the liability of the defendant for this injury, and, while the evidence would not justify the court in reversing the judgment upon the ground that the verdict was against the weight of evidence, there are circumstances connected with the plaintiff's evidence which subjects it to criticism. It may well be that the jury considered the instructions that they had received as justifying them in assuming that they could act upon the presumption that the court had told them affected the defendant's whole case and based their verdict upon such presumption, instead of a consideration of the testimony considered in the light of the incidents which had appeared upon the trial, and which they were only entitled to consider in determining the weight to be given to the evidence. I think, therefore, that the instruction given to the jury to which attention has been called requires a reversal of the judgment.

The judgment and order appealed from is therefore reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur; HOUGHTON, J., on last ground.

(118 App. Div. 107)

STAR FIRE INS. CO. v. RING.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

PRINCIPAL AND AGENT—TERMINATION OF AGENCY—INJUNCTION.

> A principal having terminated, though wrongfully, its agent's authority to write and issue insurance policies for it, he has no right to issue such contracts binding on it, and it may enjoin his doing so; his remedy being for breach of contract.

Appeal from Special Term, New York County.