308 · APPELLATE COURTS OF ILLINOIS.

Jetzinger v. London Guar. and Acc. Co., Ltd., 210 Ill. App. 308.

David Jetzinger, Appellant, v. London Guarantee and Accident Company, Limited, of London, England, Appellee.

Gen. No. 23,579.

1. INSURANCE, § 397a*—*when theft policy covers theft from inclosed porch.* A theft policy provided for indemnity for the loss of property by theft from "the interior of the house, building, apartments or rooms actually occupied by the assured, and described" in a succeeding section; the premises were described in such succeeding section as a "flat building," and "2d flat." *Held*, that the policy covered a theft of property from the interior of a porch completely inclosed on four sides and partially on two, and occasionally used by the family of the assured for a sewing, dining or sitting place.

2. INSURANCE, § 120*—*when construction of policy most favorable to assured adopted.* If an insurer against theft so draws his policy that it requires interpretation and it is fairly susceptible of two different constructions, the one which is most favorable to the assured will be adopted.

Appeal from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Reversed and judgment here. Opinion filed April 24, 1918.

JOHN M. ZANE, for appellant; ZANE, MORSE & MC-KINNEY, of counsel.

F. J. CANTY and J. C. M. CLOW, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

Appellant, having insured his personal property situated in his apartments, or rooms, where he lived, against theft, brought suit against the appellee for $135 for the loss of a rug. The cause was tried without a jury and judgment entered in favor of the

*See Illinois Notes Digest, Vols. XI to XV, and *Cumulative Quarterly,* same topic and section number.

appellee. The evidence is contained in an agreed statement of facts. On January 10, 1916, appellant took out a "theft" policy in the appellee company. The policy was for $1,000 and provided that the appellee indemnified the appellant: "1. For direct loss by burglary, larceny or theft, of any of the property stated in Section IV herein as insured hereunder, occasioned by its felonious abstraction from the interior of the house, building, apartments or rooms actually occupied by the assured, and described in said Section and hereinafter called the premises, * * * by any person or persons," etc. "2. For direct loss by damage to said property and to the said premises caused by burglars and thieves." The premises are described in said Section IV as follows: "Location of premises insured, 5726 Michigan Ave., Chicago, Ill. The building is flat building. The premises occupied by the assured hereunder are 2d flat."

The agreed statement of facts shows: "That said apartment consists of a front porch, six living rooms and a rear porch; that access to said rear porch is had by a staircase running up to the center of the rear of said building, which leads to a landing. To the north of said landing there is a door opening upon the said porch. Said porch is boarded off on the south side thereof, and the only means of entry upon said porch is through said door; that on the west side thereof there is a picket fence 3 feet high with a railing across; that on the north side thereof there is a picket fence of the same size with a railing thereon; that said porch faces the yard in the rear of said building on the west and north sides, and is about 20 feet above the ground; that the top of said porch is inclosed and there is a flooring on the bottom of the same; said porch is 8 feet by 10 feet and has been occasionally used by said plaintiff and his family as a sewing place, a dining place and a sitting place. The stairs leading to the third floor, in curving upward, make it possible for a person to jump

down to the said Jetzinger's porch. That the door of said porch has a lock thereon; that said porch is a private porch ·and the exclusive use thereof during the tenancy of said plaintiff is rightfully in said plaintiff. That about 10 o'clock of the morning of the 19th day of June, 1916, seven small rugs had been taken from the ·living room of said apartment to the said porch, for the purpose of being cleaned; that before the maid employed in so doing had finished with said rugs, she was called into a room of the said apartment to assist Mrs. Jetzinger in getting ready for a motor trip, and when she returned to said porch, a short time later, one of the rugs which she was last cleaning was missing.'' It was agreed that the missing rug was of Oriental make, known as a Suruk; that it was 6 feet and 6 inches by 4 feet and 1 inch in size, and of the cash market value of $135, and that it was lost ''by theft or burglary from the said rear porch.'' The cause was tried without a jury and the trial judge, after holding and refusing certain propositions of law, entered judgment in favor of the appellee (defendant) with costs. ·

The critical question in the case is whether the rug was feloniously abstracted ''from the interior of the house, building, apartments or rooms actually occupied by the assured.'' If the space referred to as a rear porch, which was boarded off on the south˚ side and could only be entered through a door in that south side, may be considered as part of the house or building or apartments, or as one of the rooms actually occupied by the appellant, it would seem to follow that the theft was covered by the policy. The porch being completely boarded up on the south side, where there was a landing, and containing a door to which the stairway ran, and having a picket fence 3 feet high, with a railing across, on the north and the west sides, and having a roof and a floor which were 8 feet by 10 feet, and as it was occasionally used by appellant and

his family as a sewing place, a dining place and a sitting place, it would seem unreasonable to conclude that it was not a room "actually occupied by the assured" and covered by Section IV of the policy. In determining the meaning of the important words it is necessary, of course, to keep clearly in mind, not only the exact phraseology of the contract of insurance, but the physical situation to which the particular language was intended to apply. In *Crosby v. City Council of Montgomery*, 108 Ala. 498, where a water rate was determined by the number of rooms occupied, the court said: "We think it equally clear, that the rooms of a building, within the ordinance and contract, do not include any small apartments prepared and adapted for use as mere pantries, waterclosets or bathrooms." Thus it will be seen that in interpreting the words, "$6 per annum for the use of such water for a building of five rooms," the court did not even consider inclosed spaces which are generally called and known as rooms, as intended to be covered by the words of that particular contract. In that case it was necessary to give the word "rooms" a very narrow meaning. On the other hand, it would seem to be necessary in the instant case to extend the meaning of the word "room," as much as possible, in order to carry out the obvious intention of the contracting parties. In *Haws v. Fire Ass'n of Philadelphia*, 114 Pa. St. 431, it was held that a policy of fire insurance which covered a horse "contained in his (the owner's) two-story frame barn," could be recovered upon, even though the horse was killed when not in the barn. In reaching that conclusion the court said: "The terms and conditions to which such an insurance is subject must be such as are reasonably applicable to such kinds of insurance upon this particular species of property, and such, therefore, as the parties may be presumed to have had in view when the contract was made." In the instant case, when the appellant undertook to in-

sure his personal property, it was his purpose to provide for indemnity in case of the loss of any personal property whatever from the premises occupied by him at that time as an apartment. When the words were used, "The building is flat building," and the words, "The premises occupied by the assured hereunder are 2d flat," the normal thought in his mind was that he was getting insurance covering all the premises occupied by him, including the porch room. The mere fact that in one part of the policy the words were, "Felonious abstraction from the interior of the house, building, apartments or rooms actually occupied by the assured," did not change in any way the intention as expressed in the contract of insurance, that the space protected was that which he occupied as the second flat or apartment. Of course, he knew that the use of the word "interior" would exclude his right to make any claim for the loss of anything placed or hung or found on the outside of the apartment. He knew that nothing left in the passageways, back or front, was covered by the policy. In and through those passageways he had a right of ingress and egress, but that was all. There he had no right of occupation such as he had in the apartment itself.

If the insured desired to exclude some part of the space or part of the apartment which the insured had rented and which was described in the policy, it might easily have done so by apt words. As said by the court in *Thompson v. Phenix Ins. Co.*, 136 U. S. 287: "If an insurance company intends its policy to mean otherwise, it must express that intention more distinctly than was done by the defendant. If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured." *Travelers' Ins. Co. v. Ayers*, 217 Ill. 390; *Jacobson v. Liverpool, London & Globe Ins. Co.*, 135 Ill. App. 20.

As the words in the policy which describe the premises are "The premises occupied by the assured are 2d flat," and as the space in question was actually occupied by appellant as part of his apartment and was completely inclosed on four sides and partly on the other two, and as the rug was taken from the interior of that space so occupied by him, it seems difficult to avoid the conclusion that the place from which the rug was stolen was covered by the policy.

The judgment of the trial court will be reversed and judgment entered here in favor of the appellant and against the appellee in the sum of $135.

*Reversed and judgment here.*