IRVING J. WOLF, Respondent, *v.* ÆTNA ACCIDENT AND LIABILITY COMPANY OF HARTFORD, CONN., Appellant.

First Department, May 31, 1918.

**Insurance — insurance against burglary — evidence — proof of theft.**

In the absence of a clause in a policy of insurance against burglary limiting liability to a case where there are visible signs of entry or where there is direct proof of theft, the fact of the theft may be established by proof

of circumstances which point strongly and conclusively to a conclusion that a theft was committed.

The inference of fact is one to be drawn by the jury, and while the burden of proof of larceny is on the insured that burden does not have to be sustained beyond a reasonable doubt as in criminal cases, but only requires the support of a preponderance of evidence.

Thus, the jury is entitled to find the fact of theft where it appeared that a jewel was placed in a particular receptacle from which only the plaintiff and his wife were authorized to remove it, and that they did not remove it after last placing it there, and it was removed by some unauthorized person.

SMITH and PAGE, JJ., dissented, with opinion.

APPEAL by the defendant, Ætna Accident and Liability Company of Hartford, Conn., from an order and determination of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on or about the 10th day of January, 1918, reversing a judgment of the City Court of the City of New York and reinstating the verdict of a jury in plaintiff's favor.

*Joseph L. Prager*, for the appellant.

*George Wolf* of counsel [*I. Gainsburg*, attorney], for the respondent.

SHEARN, J.:

The fact that thieves ply their calling as a rule when there are no witnesses to detect them is what leads people to resort to insurance of their personal property against theft. If practically direct proof of theft is necessary in order to recover, these insurance policies have little, if any, value. The forms of the policies are prepared by the insurance companies. It is, of course, entirely competent to insert a clause in the contract limiting liability to cases where there are visible signs of entry or where there is direct proof of theft. In the absence of such provisions, to construe the contract as requiring such proof not only violates the rule of construction of uncertain or ambiguous language, if it be such, against the party who drew the contract but is practically tantamount to holding that these policies are mere snares, for no sensible person would pay premiums on insurance against theft knowing that there was little or no likelihood

of recovering indemnity unless a witness to the theft could be produced. Of course it is not sufficient merely to show a loss or disappearance of an article insured; but it is sufficient, in my opinion, to show a loss under circumstances which not only support an inference of theft but which, even if not excluding the possibility of mistake, point strongly and persuasively to the conclusion that a theft was committed. The inference of fact is one to be drawn by a jury, and, while the burden of proof of larceny is on the plaintiff, that burden does not have to be sustained beyond a reasonable doubt, as in criminal cases, but requires only the support of a preponderance of the evidence.

Considering the evidence in the case of *Stich* v. *Fidelity & Deposit Co.* (159 N. Y. Supp. 712) Mr. Justice LEHMAN pertinently observed: " It establishes that the jewelry was placed in a box which only two persons were authorized to open. Neither of these persons took out the jewelry. It follows with reasonable probability that some unauthorized person opened the box and extracted the only articles of value. No unauthorized person would have taken the jewelry, except with felonious intent." So, here, the evidence establishes that the diamond stone was placed in a receptacle which only two persons were authorized to open. Neither of these persons took the stone out of the receptacle after it was last placed therein preceding its disappearance. To my mind it is a reasonable deduction that some unauthorized person opened the receptacle and extracted the diamond with felonious intent. In the case at bar, we have the additional fact that the plaintiff and his wife, who lived very modestly in a small flat, employed no servants and had no visitors except the wife's father. In addition, we have the unusual circumstance that two days after the stone was last placed in the receptacle and a fortnight before the loss was discovered there was a stranger alone in the apartment with the plaintiff's infant for a period of four hours. This stranger was the colored janitor, from whose workshop, according to plaintiff's evidence, it was possible to look into the window of the plaintiff's kitchen and observe the movements of plaintiff, his wife and her father on the night two days before the supposed theft, when they took the stone from the jar

First Department, May, 1918.          [Vol. 183.

and held it up to the gaslight to examine it.   The significance of this fact is that it afforded an opportunity to observe the diamond and its replacement in the jar and accounts for the otherwise inexplicable search of glass jars in a kitchen for the purpose of finding valuables.   It is true, as stated by Mr. Justice SMITH, that there is no proof that the janitor was in his room when the diamond was being examined in the kitchen; but the janitor was a witness and his testimony contains no denial that he was in his workshop on the evening in question or that he looked from his workshop window into the plaintiff's kitchen and watched the movements there during the examination of the stone.   This is significant because the whole trend of the proof showed that the janitor was suspected..   Other circumstances that must have influenced the jury were the contradictions in the testimony of the janitor.   The jury would clearly have been warranted in finding that he was not telling the truth as to certain material parts of his testimony and there would be at once suggested the query as to why he was concealing the truth.   For example, he first testified, on direct examination, that he learned that the diamond was lost in June, 1916, a few days or a week after he had spent the four hours in plaintiff's apartment.   Later, on cross-examination, he testified that he did not hear anything about the diamond until September, 1916.   Still later he again changed his testimony and said that he was acquainted with the loss by a detective in June, 1916.   Being cross-examined concerning his testimony as to plaintiff's wife asking him whether a stone would burn, he was asked, " Q. So you knew she was speaking about a diamond stone? " and he answered, " I didn't know whether it was a diamond or some kind of a stone," which led the trial justice to ask, " Did you think it was a paving stone or jewelry of some kind? "  The janitor answered, " I didn't have any idea what kind it was."  Further, when being examined with reference to his attendance at the trial, the janitor gave testimony which was contradicted by the plaintiff.   The jury credited the plaintiff and by their verdict discredited the janitor.   When, in addition to circumstances pointing to theft, the jury found that the person suspected was not telling the truth under oath, the inference of theft,

to be deduced from all the circumstances in the case, was fortified strongly.

There is no doubt but that a fair argument could be made, on the evidence of the search made of the premises and in the basement by the plaintiff's wife subsequent to discovering the loss, in favor of the defendant's contention that there was no theft but a mere careless loss of the stone. Considering how much the plaintiff's wife evidently prized this stone, which had in its setting been her engagement ring, and considering the value of the stone, measured by the circumstances in life of the plaintiff and his wife, the excited search that the wife made after discovering the loss was not unnatural. At any rate, it did not destroy the inference of felonious abstraction to be drawn from the other circumstances of the case, and the weight to be attached to the acts of the wife was for the jury to determine. If this were a case where the stone had been left on a dressing table or carelessly or thoughtlessly placed where it was liable to be lost, much stronger proof would be required. But this is no such case. The facts of controlling importance are that the stone was placed in a particular receptacle from which only the plaintiff and his wife were authorized to remove it; that they did not remove it after last placing it there; and its removal by some unauthorized person was sufficient proof of felonious intent, under this form of policy.

We are cited the case of *Polstein* v. *General Accident, Fire & Life Assur. Corp.* (158 N. Y. Supp. 868), in which a recovery was not permitted, but the facts were very different from those here involved. In that case the plaintiff's wife was possessed of a jeweled platinum watch bracelet of the value of about $600 or $700. This bracelet was kept by her in a glove box which was placed on a table in her bedroom. The watch was used by her constantly. She placed the watch in the glove box on March 13, 1914, and discovered it missing on March 25, 1914. During the interval between March thirteenth and March twenty-fifth the plaintiff's wife took from the glove box on frequent occasions long kid gloves and other gloves belonging to herself and other members of the family, but on none of these occasions did she look for the watch. At the same time that the plaintiff's wife discovered the loss of the watch

she found that a scarf pin and knife and chain belonging to her son were missing. The defendant insurance company was notified of the loss of the watch, pin and the knife and chain. After a search made by the plaintiff and his wife for the watch, pin, knife and chain, the pin and the knife and chain were found. Plaintiff's wife testified that they had been misplaced.

The determination of the Appellate Term should be affirmed, with costs.

CLARKE, P. J., and LAUGHLIN, J., concurred; SMITH and PAGE, JJ., dissented.

SMITH, J. (dissenting):

The action is upon a policy of burglary insurance. The sole question presented is one of fact as to whether the plaintiff made proof that his loss occurred through theft. The jury found for the plaintiff. The verdict was set aside by the trial justice, who directed a judgment for the defendant. This judgment was in turn reversed by the Appellate Term and the verdict reinstated. From this determination of the Appellate Term this appeal has been taken by permission. The plaintiff's claim substantially is that in the middle of May a diamond stone in a ring worn by his wife had become loose in the setting; that he removed it from the setting and his wife wrapped it up in some tissue paper, inclosed it in an envelope and put it in a cereal can upon the shelf in the kitchen. The setting apparently was not placed with the stone, although it was the intention of the parties to have the stone reset at some early opportunity. The setting was kept in a button can. The evidence is to the effect that in the latter part of May the plaintiff's father-in-law was there; that he noticed the absence of the ring from his daughter's hand and asked about it; that the parties then went into the kitchen, took the stone from the cereal jar and were examining it under the electric light and were there about ten minutes. Within a few days thereafter the plaintiff and his wife went to Coney Island and had the janitor stay in the room about four hours with a young child about two years old while they were gone. About a week thereafter the plaintiff's wife, for some reason, looked into

the can and found the stone missing.  She thereupon made a thorough search all over the place and even went down stairs and looked through the ashes that were the result of the burning of the garbage to see if the stone was there.  She was unable to find it and notified her husband, who gave notice to the insurance company, and this action was afterwards brought.

I am unable to attribute any significance to the examination of this stone in the kitchen under the electric light by the plaintiff and his wife and his wife's father.  Opposite the window the janitor had a room in the basement.  It is not shown that the janitor was in his room in the basement, or that there was a light there, or that he was present at any place where he could have seen what was going on.  It appears that from the janitor's room, the lower part of the kitchen, where this ring was being examined, could not be seen, and standing out in the courtyard outside of the janitor's window, nothing definite could be seen because of net curtains which were hanging upon the window.  The janitor was in this apartment for four hours upon the night that the plaintiff and his wife went to Coney Island, and if he had so desired he could easily have found this stone and have taken it, and this incident as to the examination of the stone several days before under the light in the kitchen becomes in my view practically immaterial.  The question then comes down to this: This stone has been lost.  This janitor was in the apartment for four hours upon one night.  He absolutely denies that he took the stone.  The plaintiff and his wife swear that the stone was not seen by them after it was put back in the jar the night it was examined.  Do these facts standing alone prove theft?  The testimony of the wife is not wholly satisfactory.  If she had known, as she now swears, that it was last put in the jar upon the night it was examined, why did she hunt in the garbage and all over the house for it?  She swears that she noticed that the stone was loose about two days before the plaintiff took it out of the setting.  She had sworn before that the ring (meaning the setting) was put in the little jar as soon as the stone was taken out, and that the ring is still in the button jar.  She stated: " I took the stone and put it into the cereal jar."

She was then asked: " Q. Do you know when it was you put this ring into the button jar?  A. About two days before I placed the stone in the jar.  Q. About two days before you put the stone in the jar?  A. No, two days after my husband pushed the stone out of the ring."

She afterwards swears that after the stone was pushed out of the ring, it was put into a cereal jar.  " Q. What did you do with the ring?  A. Put it in the button jar.  Q. There was two days elapsed between the time he took it out?  A. No, sir, there was no lapse at all.  He took the ring, pushed the stone out, and I put the stone in the cereal jar and the ring in the button jar."

She swears that she went to get the ring thereafter because she wanted it reset.  She was then asked: " Q. Had you made any arrangements with anybody to have it reset?  A. Yes, I think my husband made some arrangements with some jeweler, I don't remember exactly.  Q. Were you to go to the jeweler's to take it there?  A. I think — I don't know — I don't know — I suppose I was."

The janitor denies absolutely having taken the stone, while admitting that he was in the apartment taking care of the plaintiff's child the evening the plaintiff and his wife went to Coney Island.  It may be that the plaintiff's wife was confused in giving her testimony, and that her contradiction as to the relative time when she put the setting in the button jar and the stone in the cereal jar was only the result of that confusion.  I agree, however, with the trial justice that the evidence fails to establish that this stone was stolen from the plaintiff's apartment, upon which issue the plaintiff has the burden of proof.

The determination of the Appellate Term and the order of the City Court entered thereupon should be reversed, and the judgment of the City Court reversed and a new trial ordered, without costs of this appeal in the Appellate Term or in this court to either party as against the other.

PAGE, J., concurred.

Determination affirmed, with costs.