Irving Levine, Plaintiff, *v.* Accident and Casualty Insurance Co., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, April 28, 1952.

*Henry S. Drezner* for plaintiff.

*William R. Armuty, Jr.,* and *John J. Jablonsky* for defendant.

STARKE, J.   This is an action to recover on a theft policy the sum of $750, alleged to be the value of a diamond ring.

This case involves the construction and interpretation of the following words: *" Mysterious disappearance* of any insured property shall be *presumed* to be due to theft."

There is no New York law on the subject.   Counsel cite two cases in the United States (*Davis* v. *St. Paul Mercury & Ind. Co.,* 227 N. C. 80, and *Weiner* v. *United States Fidelity & Guar. Co.* [N. J., Mercer Co. Dist. Ct., Docket No. 1157]).

The policy is a " residence and outside residence " theft policy.   Under Coverage B the policy covers " theft away from the premises excluding property unattended in automobiles."

Under the heading " Conditions," there is a clause in the policy containing the following: " A. DEFINITIONS. (2). THEFT. The word ' theft ' includes larceny, burglary and robbery. *Mysterious disappearance of any insured property,* except a precious or semi-precious stone from its setting in any watch or piece of jewelry, *shall be presumed to be due to theft."*

The evidence adduced at the trial discloses: The plaintiff attended a show at the Mayfair Theatre on a Saturday night, September 15, 1951.   About 10:30 P.M. he went to the gentlemen's room and, in washing his hands, he removed the ring and placed it on the washstand.   He turned to wipe his hands and then forgot about the ring and left the room.   He did not realize the ring was missing until about 11:00 A.M. the next morning (Sunday).   He definitely remembered leaving the ring on the washstand.   He was positive the ring did not go down the drain.   The last place he saw the ring was on the washstand. He never saw the ring after that.

On Sunday he reported the loss to the management of the Mayfair Theatre and the local precinct of the police department. A detective was assigned to the case.   A search and investigation followed but the ring was never recovered.

A jewelry expert testified he had appraised the ring on May 15, 1949, and that the fair and reasonable value of the ring on the date of the loss was $750.

The defendant company disclaimed coverage under this policy for this loss on the grounds that this case does not come within the " mysterious disappearance clause " of the policy.   It contends in part: " Here we do not have a mysterious disappearance but rather a ring which had been put on a washstand and

which was left mislaid. There is no mystery about this loss as the Plaintiff definitely placed this ring on the washstand and then left it at the Mayfair Theater. The leaving of the ring at that time created the loss to the Plaintiff and it is accounted for by his direct testimony on the stand. There was nothing mysterious about the disappearance of the ring.''

This court cannot agree with the defendant's contention. The reasoning is fallacious.

The words '' mysterious disappearance '' mean a disappearance that is mysterious. The adjective '' mysterious '' modifies the noun '' disappearance ''. '' Mysterious '' means unknown, unaccountable, unexplainable. Therefore, a '' mysterious '' disappearance is a *disappearance* which is unexplainable, unaccountable, or in an unknown manner.

Defendant seems to be under the impression that there is no mystery about the loss because the plaintiff remembers definitely that he placed the ring on the washstand. Of course there is no mystery about the placing of the ring; however, there is a mystery as to its disappearance. What happened to the ring after the plaintiff walked out and left it on the washstand is unknown and unexplainable. The fact that he remembers he left it on the washstand does not explain the disappearance. What happened to the ring after it was placed on the washstand is a mystery. The *disappearance* of the ring has never been explained.

The defendant further argues that there was no mysterious disappearance — the property was '' left mislaid,'' and says: The disappearance of property which is lost or mislaid can readily be explained and if its disappearance can be logically, reasonably and rationally explained there obviously can be nothing mysterious about its disappearance and hence the policy does not apply to cover such property.

Property is '' lost or mislaid '' if a person cannot remember where he placed the article and therefore cannot find it. In such a case, there is no mysterious disappearance. It might have been stolen, but the presumption of theft in the policy would not apply because those facts do not establish that the property has disappeared mysteriously. However, assume that a person *remembers* where he placed the article. If it is not in its place when he attempts to recover it, it has disappeared in a mysterious (unknown) manner. The disappearance or vanishment *from its place* is unknown and unexplainable.

What does " presume " or " presumption " mean? It means: " to take for granted " or " that which we may assume without proof ". " That which is presumed," says Richardson on Evidence (§ 7), need not be proved, " unless and until evidence rebutting the presumption is admitted ".

The presumption is therefore rebuttable. It is for the insurer to come forward with proof necessary to overcome the presumption. A presumption means to accept as being entitled to belief without examination or proof. (*Ferrari* v. *Interurban St. Ry. Co.,* 118 App. Div. 155.) A presumption is destroyed only by evidence to the contrary. (*People* v. *Will,* 289 N. Y. 413; *Potts* v. *Pardee,* 220 N. Y. 431; Note, 8 A. L. R. 785, 789; *People ex rel. Wallington Apts.* v. *Miller,* 288 N. Y. 31; Note, 141 A. L. R. 1036, 1037.)

A proper interpretation of the " mysterious disappearance " clause in this policy would therefore be: *this clause means that a presumption immediately arises that when property disappears mysteriously (in an unknown manner), the loss is due to theft.* The presumption has created a rule of evidence which is binding on the parties.

The court agrees with defendant's contention that this is a theft policy and that the intent is to cover only losses which occur because of theft. However, the company has contracted away the necessity of the insured proving theft by inserting the clause " mysterious disappearance shall be presumed to be due to theft." All that the insured need establish is " mysterious disappearance ". If he proves that the property has disappeared in a mysterious manner, he is entitled to the presumption that the loss is due to theft.

This court also agrees that the burden of proof is always upon the insured to prove the loss is due to theft. However, having received by contract the benefit of the presumption of theft, the plaintiff need only introduce sufficient evidence to show " mysterious disappearance " in order to establish a prima facie case. Only if the company successfully rebuts the presumption, does the assured again have the burden of proving that a theft actually occurred in order to recover.

This court differs with the company's contention that: " Nor does it insure against *any* and *all* mysterious disappearances." In accordance with the insurer's language and its own definition, all mysterious disappearances *are* covered with but two specific exceptions. Moreover, the insurer, in saying that theft shall be presumed does not limit itself to any particular

type of mysterious disappearance. If it intended to cover only certain kinds of mysterious disappearances it should have said so in clear, plain and unmistakable language. This it could have done very well. It went to the trouble of excluding property left unattended in an automobile and stones from settings. The policy covers *any* other mysterious disappearance. The burden is on the defendant to come forward and overcome or disprove the presumption, by showing the loss was not occasioned by theft after plaintiff has introduced testimony establishing that the property has disappeared mysteriously (in an unknown, unexplainable or unaccountable manner) under any circumstances whatsoever except the two instances specifically excluded by the language of the policy.

Furthermore, the insured need not produce evidence excluding the probability that the ring was not stolen. Neither is he required to prove that larceny is the more rational inference. (*Davis* v. *St. Paul Mercury & Ind. Co., supra.*)

It is also basic that the insured need not prove who stole the article. (*National Sur. Co.* v. *Fox*, 174 Ark. 827; Note, 54 A. L. R. 458, 467.) Neither is the question of negligence in leaving the ring on the washstand involved. In the absence of fraud, the negligence of the assured will not prevent a recovery under an insurance policy, even though it be very great in degree. (*O'Brien* v. *Commercial Fire Ins. Co.*, 63 N. Y. 108; *d'Autremont* v. *Fire Assn.*, 65 Hun 475.) In the absence of all fraud, the proximate cause of the loss only is to be looked to. Hence a loss within the policy, though occasioned by the gross negligence of the insured, is covered. (*Gates* v. *Madison*, 5 N. Y. 469.)

It is not the construction or interpretation which the company gives to a policy that governs. *It is the plain meaning understandable to " Joe Doakes ", the average person, that counts.* A review of the law on construction of clauses in policies follows herewith: The New York Court of Appeals said in *McGrail* v. *Equitable Life Assur. Soc.* (292 N. Y. 419, 424) : " Such meaning must be given to the terms used as would be ascribed to them by the average man in applying for insurance ".

Judge Learned Hand wrote in *Gaunt* v. *John Hancock Mut. Life Ins. Co.* (160 F. 2d 599, 601) : " An underwriter might so understand the phrase when read in its context, but the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insur-

ance, who read it colloquially. It is the understanding of such persons that counts."

In *Joslin* v. *Ætna Life Ins. Co.* (67 R. I. 261, 265) the Supreme Court of Rhode Island stated that: " If we adopt the inference, as we should, that the insurer wrote the policy in good faith, we think we should also adopt the inference that it was written not solely for expert, scientific, and professional medical men; but that the policy was written in the sense in which the insurer had reason to believe it would be interpreted by the ordinary reader and purchaser." (Citing authorities.)

In *Rice Oil Co.* v. *Atlas Assur. Co.* (102 F. 2d 561, 571) the Court of Appeals for the Ninth Circuit had occasion to review and quote some dynamic language from several Montana decisions thus: " In the case of Montana Auto Finance Corp. v. British & Fed. Fire Underwriters, 72 Mont. 69, 232 P. 198, at page 200, 36 A. L. R. 1495, the Supreme Court of Montana stated: ' It is a matter of common knowledge that insurance companies prepare their own contracts of insurance. The language of the policy is their language. They do not permit the insured to have a voice in the drawing of his own contract; nor does he negotiate with reference to its terms in the sense that negotiations are carried on before agreements are reached in ordinary contracts. Joyce on Insurance, p. 594. Policies of insurance are invariably complex and are understood by laymen with difficulty, and as a result the insured generally makes a request for the kind of insurance he desires and then signs " on the dotted line " upon a formidable appearing printed form with the provisions of which the average assured has slight, if any, acquaintance. The policies are prepared by skilled lawyers retained by the insurance companies, who through years of study and practice have become expert upon insurance law, and are fully capable of drawing a contract which will restrict the scope of the liability of the company with such clearness that the policy will be free from ambiguity, require no construction, but construe itself. Because of reasons such as these, whenever the contract of insurance is so drawn as to be ambiguous, uncertain, and to require construction, the courts of this country resolve the doubt in favor of the insured and against the insurer, in accordance with the rule contra proferentem.' " (Citing authorities.)

Where the true meaning of insurance policy provisions is in question and in doubt the courts invariably take the view expressed very well in Joyce on The Law of Insurance, ( [2d ed.],

Vol. 1, pp. 590, 591, 592, § 222) in these words: " It is a settled rule of construction that in cases of doubt policies of assurance shall be construed strictly against the insurer. * * * So of two interpretations equally reasonable that construction most favorable to the assured must be adopted, for the language is that of the insurers, and if the terms of the policy are such that reasonable and intelligent men would honestly differ as to its meaning, it will be construed against the insurer; and this is so of equivocal expressions which would *narrow the range* of the insurer's obligations, and the rule applies to clauses restrictive of the company's liability in an accident policy, and to accident policies generally, and to exceptions, and to conditions and provisions which would narrow the range and *limit the force* of the principal obligation or *lessen the indemnity.*" (Italics mine.)

The words employed in a theft policy must be taken and understood in their plain, ordinary, usual and popular sense, and given a fair, reasonable and sensible construction. (*Princess Ring Co.* v. *Home Ins. Co.,* 52 R. I. 481; *Herrman* v. *Merchants' Ins. Co.,* 81 N. Y. 184.)

Doubtful, ambiguous, or obscure provisions should be taken most strongly against the insurer. (*Gross* v. *Fidelity & Deposit Co.,* 72 F. 2d 223; *Hoffman* v. *Ætna Fire Ins. Co.,* 32 N. Y. 405; *Griffey* v. *New York Central Ins. Co.,* 100 N. Y. 417.)

If the insurer so draws a policy that it requires interpretation and it is fairly susceptible of two different constructions, the one which is most favorable to the insured will be adopted. (*Jetzinger* v. *London Guar. & Acc. Co.,* 210 Ill. App. 308; *Thompson* v. *Phenix Ins. Co.,* 136 U. S. 287; *Killeen* v. *General Acc. Fire & Life Assur. Corp.,* 131 Misc. 691; *Colyer* v. *North Amer. Acc. Ins. Co.,* 132 Misc. 701; *Long Is. Coach Co.* v. *Hartford Acc. & Ind. Co.,* 223 App. Div. 331.)

Whether given words are used in an enlarged or restricted sense, a literal construction must be applied in favor of the promisee and that construction should be adopted which is most beneficial to the insured. (*Hoffman* v. *Ætna Fire Ins. Co., supra.*) This case also quotes Chief Justice MARSHALL in the case of *Yeaton* v. *Fry* (5 Cranch [U. S.] 335, 341). The *Hoffman* case also talks about insurers who aim at drawing customers into the payment of premiums and hold out illusory promises, couched in vague and deceptive terms, for the very purpose of enabling them to elude liability.

One may therefore reasonably inquire "Did the insurance companies intend to give anything to the insured which he didn't have before this new presumptive clause was inserted in the policy if the company's meaning were applied to the clause?"

In an article in The Insurance Law Journal (No. 349, Feb., 1952, issue, p. 102) the author, Alex H. Opgenorth, a Wisconsin attorney and officer of an insurance company, carefully and capably analyzed and described the entire picture with respect to the "mysterious disappearance" clause, and then quite aptly remarked: "An analysis of these cases makes it quite clear that the law was fairly well crystalized prior to 1943. It is also clear that under the old type policy, the assured was entitled to go to the jury with his case if he could prove by circumstantial evidence that a theft probably occurred. *That being true, one begins to wonder whether any substantial change was made* in the policy *by importing* into it the mysterious disappearance and presumption of theft clause. I leave the answer of that question to you." (Italics supplied.)

Even without the benefit of the presumptive clause, the plaintiff is entitled to recover here because a logical inference may be drawn from the circumstances that the loss was due to theft. But if an insured is required to prove the theft irrespective of the clause, then it is fair to inquire "What have the companies done for the insured by the importation of this new clause into the policy?"

Here are decisions prior to the importation of the clause in question. In the New York case of *Stich* v. *Fidelity & Deposit Co.* (159 N. Y. S. 712), where the company's liability depended upon proof of theft and there was no presumptive clause, it was held that a logical inference of a felonious taking may be drawn from circumstances surrounding a disappearance. And Judge LEHMAN said (p. 713): "In this case the trial judge has held that circumstantial evidence shows a felonious abstraction, and if plaintiff's evidence is sufficient to raise an inference to this effect, we must affirm the judgment."

In another New York case which did not contain the presumptive clause, it was held that in order to recover it is sufficient to show loss or disappearance of the insured article under circumstances supporting inference of theft, and pointing to conclusion that theft was committed. (*Wolf* v. *Ætna Acc. & Liability Co.*, 183 App. Div. 409.)

The *Stich* case was followed in *Haas* v. *Fidelity & Deposit Co.* (97 Misc. 4) which held that it was enough if insured showed circumstances sufficient to raise an inference that the property was feloniously abstracted; this spells out a prima facie case, and the insurance company should have then been put on its proof, citing *Stich* v. *Fidelity & Deposit Co.* (*supra*); *Orlando* v. *Great Eastern Cas. Co.* (91 Misc. 539), and *Fienglas* v. *New Amsterdam Cas. Co.* (151 N. Y. S. 371).

The presumptive clause in the present policy removes the necessity of the insured to produce " direct and affirmative evidence " that the loss was due to theft, which proof was formerly required under many policies. (*Duschenes* v. *National Sur. Co.*, 79 Misc. 232; *Gordon* v. *Ætna Ind. Co.*, 116 N. Y. S. 558; *Hart* v. *American Fidelity Co.*, 121 N. Y. S. 605.)

Even in the absence of a presumptive clause an insured was entitled to have the case submitted to the jury where he could prove by circumstantial evidence that a theft probably occurred. (*Caldwell* v. *St. Paul Mercury-Ind. Co.*, 210 Miss. 320; *National Sur. Co.* v. *Fox*, 174 Ark. 827, *supra*; *Sowden* v. *United States Fidelity & Guar. Co.*, 122 Kan. 375; *Hubbard* v. *Globe Ind. Co.*, 87 Pa. Superior Ct. 483, 485; *Firemen's Fund Ind. Co.* v. *Perry*, 149 Fla. 410, Note, 54 A. L. R. 467, 468.)

Larceny of a brooch left on a settee in a fitting room of a store is reasonably to be inferred, where it cannot afterwards be found. (*Foster* v. *Liverpool & London Globe Ins. Co.*, 222 Ill. App. 37.)

Evidence that a ring was left in a sleeping car, and could not be found after a thorough search, established a felonious taking (*Simond* v. *Liverpool & London Globe Ins. Co.*, 219 Ill. App. 300).

Let us now consider the evidence and see what inferences can be drawn. It may reasonably be inferred that one of two things probably happened. A dishonest person picked up the ring and appropriated it to his own use by not making a report to the theatre management or to the police. The other possibility is that the ring went down the drain. But this latter possibility is only a mere surmise, conjecture or speculation. The testimony for the plaintiff was not directly contradicted. The insurance company offered no proof to the contrary. It merely raised the possible thought that the ring might have gone down the drain by the asking of questions on cross-examination of the plaintiff. The plaintiff's testimony was direct and to the point that the ring definitely did not go down the drain. Of course, this referred to what happened in his presence. As to what happened after he left the room no one

knows and we thus have a mysterious disappearance — a presumption of theft. As to what happened is an issue of fact for the court to decide. All the testimony must be weighed, and the possibility that the ring went down the drain is not to be overlooked by the court in its consideration.

The surrounding facts and circumstances that the disappearance of the property was not in fact due to theft must be considered by the trier of the facts in arriving at a decision.

There is no evidence in the entire record as to what happened to the ring after it had been placed on the washstand. The disappearance is unexplainable and unaccountable. Hence, it is a mysterious disappearance.

Furthermore, in addition to the contractual inference of theft, the facts testified to and established by the plaintiff's evidence give rise to a legitimate inference of theft, and the inference was not negatived by the facts. It follows, therefore, with reasonable probability, that some unauthorized person appropriated the ring to his own use.

Basing judgment on a logical, fair and reasonable inference of theft, not on mere suspicion and, further, by the weight of the credible evidence, this court finds that the plaintiff has sustained the burden of proof by a fair preponderance and has established that the loss was due to theft in accordance with the terms and provisions of the policy and that the rebuttable presumption which immediately arises by reason of the mysterious disappearance clause was not overcome by the defendant.

Accordingly, judgment is hereby rendered in favor of the plaintiff in the sum of $750, with interest from the amended date, September 15, 1951. Ten days' stay of execution.