RUFFALO'S TRUCKING SERVICE, Incorporated, Plaintiff-Appellee,

v.

NATIONAL BEN-FRANKLIN INSURANCE COMPANY OF PITTSBURGH, Pennsylvania, Defendant-Appellant.

No. 123, Docket 24250.

United States Court of Appeals Second Circuit.

Argued Jan. 24, 1957.

Decided May 8, 1957.

Richard T. Graham, New York City (Patrick J. Hughes, New York City, of counsel), for plaintiff-appellee.

George I. Janow, New York City, for defendant-appellant.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The defendant, National Ben-Franklin Insurance Co., appeals from a judgment in favor of the plaintiff in the amount of $5,348.54, entered upon a jury verdict below. The plaintiff, a common carrier trucking company, had brought an action on a policy of indemnity insurance to recover the value of 35 bags of green coffee lost in the plaintiff's custody, allegedly from theft by a person or persons unknown. The contract of insurance was made in the State of New York. Our jurisdiction is based upon diversity of citizenship.

From all the evidence the jury could have found the following facts. On the evening of May 10, 1954, one Lloyd Gillum, employed by the plaintiff as a truck driver, set out from Newark, New York, plaintiff's terminal, in an empty tractor-trailer for New York City to pick up 250 bags of green coffee. About 5:00 A. M. on May 11 Gillum arrived at Beach and Hudson Streets, Manhattan, where he parked the tractor-trailer. He then waited until the arrival of another of the plaintiff's employees, one Anthony Licastri. Licastri's job was to meet incoming drivers and escort them to the pier where vehicles were to be loaded. At Licastri's suggestion, Gillum, who had been driving all night, retired to a nearby hotel to rest while Licastri drove the vehicle to Pier 3 on the North River, arriving there around 7:30 A. M. after a fifteen-minute drive.

At the pier 250 bags of green coffee, each bag weighing over 150 pounds, were subsequently loaded on the trailer. The loading was completed by 11:30 A. M., and Licastri was checked out by an electric clock at 11:41 A. M. Licastri then drove to the corner of Hudson and Beach Streets where he thought he might find Gillum. Not finding Gillum, he went to Gillum's hotel. Gillum testified that Licastri woke him up around 12:30 P. M., and that a few minutes later they both went down to the tractor-trailer, which was double-parked in front of the hotel. Licastri advised Gillum not to open the doors of the trailer to check its contents, because, according to Licastri, the truck was so fully loaded that some of the bags would fall out if he did so. They then drove the vehicle to a nearby street in order to make a minor repair on its muffler. This took about ten minutes. Thereafter they proceeded toward the Holland Tunnel, Licastri alighting a few blocks from its entrance. Gillum then drove on alone through the tunnel and continued on his way to Geneva, New York. He made several stops along the way for gas and coffee, and to repair the muffler again. On these occasions the trailer was sometimes out of his sight, but not for more than ten or fifteen minutes at a time. However, around 1:00 A. M. Gillum stopped at his home in the small town of Montezuma, New York, where he slept for almost five hours. During this period the vehicle was parked close to his house about seven feet off the main highway. The trailer doors were not locked.

Gillum arose at 6:00 A. M. on the morning of May 12, and, without checking the contents of the trailer, drove to the premises of the consignee in Geneva. He stopped on the way for coffee and doughnuts and to call his terminal. When the doors of the trailer were opened at the consignee's premises, only 215 bags of the green coffee were found. Gillum thereupon reported the shortage to his

employer. He later reported to the New York State Police and went with troopers to his home in Montezuma. No wheel tracks other than those of his own vehicle were found near the place where the tractor-trailer had been parked during the night.

The 35 bags were never recovered. As a common carrier the plaintiff was liable to its customer, the consignee, for their value. It settled with its customer and sought to recover the sum so paid from the defendant with whom it had an indemnity insurance policy. The pertinent provisions of this policy, insofar as here relevant, read as follows:

"5. This Insurance Covers
Within the foregoing provisions and
 except as hereinafter provided.

The liability of the Assured, as a common carrier or private carrier or under bills of lading or shipping receipts, for loss and/or damage to the goods and/or merchandise caused by:
* * *
 (e) Theft of entire shipping package or shipping packages, but excluding pilferage.
"6. This Insurance Does Not Cover
 Liability For
* * *
 (h) Loss or damage arising out of infidelity of the Assured or his or their employees and/or agents."

The contested issues at trial were whether there was sufficient evidence to show a theft of the coffee as distinguished from some other way in which it was lost; and whether the loss arose out of the infidelity of any employee of the plaintiff, particularly the alleged infidelity of Licastri. At the close of the evidence the defendant moved to dismiss the complaint. This motion was overruled. During the trial defendant also objected to certain trial rulings and preserved its rights with respect to these rulings on appeal.

At the close of the trial the judge submitted five specific questions to the jury. The jury returned a special verdict thereon, finding as facts that the 35 missing bags were stolen while on the trailer, and that they were not stolen as the result of any infidelity or dishonesty of Licastri.[1] They also returned a general verdict for the plaintiff for the proven value of the lost bags. A motion to set the general verdict aside was denied.

On this appeal from judgment on the verdict in favor of the plaintiff, the defendant insurance company urges three grounds for reversal: (1) there was insufficient evidence of theft to submit the plaintiff's case to the jury, and therefore the trial court first erred in refusing to dismiss the complaint, and then, after the verdict for the plaintiff, in refusing to set it aside; (2) the trial court erred in ruling at the outset of the trial, and in charging the jury, that the burden of proof was on the defendant to establish that the loss resulted from the infidelity of the plaintiff's employees; and (3) the trial court erroneously excluded from the defendant's direct case a copy of the indictment and the record of the conviction of Licastri for a theft of coffee occurring almost two months after the loss here in issue.

1. The questions submitted to the jury, with the answers given thereto, were:
 1. "Were there 250 bags of green coffee loaded on plaintiff's truck at Pier 3, North River, on the morning of May 11, 1954?"
 Ans. "Yes."
 2. "How many of the bags were unloaded from plaintiff's truck at the plant of Market Basket Corporation at Geneva, New York?"
 Ans. "215."
 3. "If any of the bags loaded on the truck at Pier 3 were missing when the truck was unloaded at Geneva, were the missing bags stolen while on the truck?"
 Ans. "Yes."
 4. "If they were stolen, were they stolen as the result of any infidelity or dishonesty of Licastri?"
 Ans. "No."
 5. "If they were stolen but not as the result of the infidelity or dishonesty of Licastri, who did steal them, if you are able to state?"
 Ans. "Unable to state."

We cannot accept any of these contentions, and we therefore affirm the judgment below.

## I

 The appellant's first contention is totally devoid of merit. Under the specific provision of the insurance policy sued upon, the plaintiff was required to show that a theft of one or more "entire shipping packages" occurred while the coffee was in its custody. But the plaintiff, unlike the prosecution in a criminal proceeding, did not have to prove the fact of theft beyond a reasonable doubt. Wolf v. Aetna Accident & Liability Co., 1st Dept.1918, 183 App.Div. 409, 170 N.Y.S. 787, affirmed 1920, 228 N.Y. 524, 126 N.E. 925; Thomas J. Atkins & His Five Sons, Ltd. v. Massachusetts Bonding & Ins. Co., 1955, 207 Misc. 58, 139 N.Y.S.2d 446. It is sufficient if evidence is adduced from which a jury could reasonably infer that a theft occurred. Wolf v. Aetna Accident & Liability Co., supra; Levine v. Accident & Cas. Ins. Co., 1952, 203 Misc. 135, 143, 112 N.Y.S.2d 397, 406. The testimony supports the finding of the jury that 35 bags of coffee were somehow removed from the plaintiff's trailer between the time of loading and the time of arrival at the premises of the consignee. Absent any evidence of destruction, authorized removal, or loss by falling from the trailer, it is a fair and indeed almost an inescapable inference that the bags were stolen.

Also, since we hold the rulings respecting burden of proof to be proper under the applicable New York law, the jury was fully justified in finding, as it did, that the defendant had not sustained that burden of proof and that there was no infidelity on the part of any of the plaintiff's employees. Therefore, since there was ample evidence to support the special verdict and the general verdict, we may not set the general verdict aside on appeal. Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916; Skene v. O'Dwyer, 5 Cir., 1953, 204 F.2d 909, 912.

## II

██ The appellant's second contention requires a more detailed analysis. At the outset of the trial the trial judge ruled that under the terms of the insurance contract in suit the burden was on the defendant insurance company to prove that the loss arose "out of the infidelity of the Assured or [its] employees and/or agents." He similarly charged the jury at the conclusion of the trial. The defendant insurance company argues that these rulings were erroneous, and that the plaintiff, as a part of its affirmative case, had the burden of negating by a preponderance of the evidence that the loss so arose.

We find that both the language and the format of the insurance policy support the rulings below, and we construe the policy as it was there construed.

In support of its contention, the defendant relies on a number of New York decisions. See, e. g., Carles v. Travelers' Ins. Co., 1st Dept.1933, 238 App.Div. 43, 263 N.Y.S. 29, and Lavine v. Indemnity Ins. Co., 1933, 260 N.Y. 399, 183 N.E. 897, to the effect that the assured has the burden of proving that the loss was of a type included in the general coverage provisions of the insurance contract. But in the Carles case the court pointed out that the provision there in issue was "found in the main body of the policy distinctly related to coverage. It was not one of the conditions listed in the policy exculpating the defendant from liability." 263 N.Y.S. at page 32.

This distinction between "coverage" provisions and exculpating or "exclusionary" clauses has been recognized since then by the New York courts; and the distinction is still the decisive factor in determining which party has the burden of proof on an issue such as the issue here in dispute. See, e. g., Prashker v. United States Guarantee Co., 1956, 1 N.Y.2d 584, 154 N.Y.S.2d 910, 136 N.E. 2d 871; Wagman v. American Fidelity & Cas. Co., 1952, 304 N.Y. 490, 109 N.E. 2d 592. Thus, although the plaintiff insured may have the burden of proving that the policy covers his loss, the defendant insurance company has the burden of

proving any fact falling within an exclusionary clause which, despite the "coverage" provisions, will bar recovery on the policy. Prashker v. United States Guarantee Co., supra, 1 N.Y.2d at page 592, 154 N.Y.S.2d at page 916, 136 N.E. 2d at page 875.

Paragraph 5, entitled "This Insurance Covers," sets forth the general types of risk covered by the policy. Section (e) of paragraph 5 provides coverage for "Theft of entire shipping package or shipping packages, but excluding pilferage." Obviously the plaintiff had the burden of proving that the loss of the 35 bags of green coffee fell within the language of this coverage; and this burden included a negation that the loss was one of pilferage, as distinguished from theft of entire shipping packages.

In contrast, however, the "infidelity" provision is not found in paragraph 5 but rather in section (h) of paragraph 6. Paragraph 6, which is captioned "This Insurance Does Not Cover Liability For * * * ," sets forth exclusions from coverage. Thus the language here in issue is *not* "found in the main body of the policy distinctly related to coverage," Carles v. Travelers' Ins. Co., supra, but is found in a separate and distinct exclusionary clause. It would appear that the trial court properly ruled, in accordance with the applicable New York law, that the defendant just as obviously had the burden of proving any contention advanced under this paragraph as the plaintiff had the burden of proving any assertion under paragraph 5.

## III

■■ Lastly, the appellant urges that the trial court erred in excluding from the appellant's direct case a copy of an indictment charging Licastri, along with several co-conspirators, with conspiring to steal coffee and with transporting stolen coffee in interstate commerce; and in excluding, except for a limited purpose, the record of the conviction upon that indictment. The indictment, since it was only hearsay, was clearly inadmissible for any purpose. 3 Wigmore,

Evidence § 980a (3d ed. 1940). The conviction was admitted for the sole purpose of impeaching the credibility of Licastri, whose deposition was introduced by the plaintiff.

The appellant, citing such cases as Boyd v. Boyd, 1900, 164 N.Y. 234, 58 N.E. 118, and People v. Duffy, 1914, 212 N.Y. 57, 105 N.E. 839, L.R.A.1915B, 103, contends that Licastri's conviction should have been admitted as tending to show that Licastri may have participated in the theft of the 35 bags of coffee. The appellant maintains that the event in suit plus the conviction for another theft tended to show the existence of a general scheme or plan to hijack large amounts of coffee from the New York waterfront.

Appellant also argues that the rules invoked in criminal trials to exclude evidence of offenses not in issue are inapplicable to civil suits, citing the venerable case of Faucett v. Nichols, 1876, 64 N.Y. 377, involving an action against an innkeeper for the loss of property by fire. But there, in holding it error to exclude evidence of an attempt by an incendiary to set fire to a nearby building on the very night of the fire in question, the court wrote:

"There is no fixed and definite rule by which it can be determined whether a collateral fact is so remote as to be inadmissible to support the principal fact sought to be established. The question must, to a considerable extent, be decided in each case on its own circumstances, and we are of opinion that the proof offered, to which we have referred, ought to have been admitted." 64 N.Y. at page 384.

Here the trial court pointed out that the offense for which Licastri had been convicted involved a theft from another trucking company and that the theft occurred almost two months after the coffee here in issue was loaded on the plaintiff's vehicle. The court thereupon excluded the record of conviction except as it might impeach Licastri's credibility. In the posture of this case and under the circumstances respecting relevancy and

materiality in which the offer was made, we find no error in the ruling.[2]

Judgment affirmed.

2. Many courts have excluded criminal convictions as evidence-in-chief in subsequent civil litigation even when the conviction necessitated a finding of the identical fact in issue in the civil suit. See generally 5 Wigmore, Evidence § 1671a (3d ed. 1940). But see Schindler v. Royal Ins. Co., 1932, 258 N.Y. 310, 179 N.E. 711, 80 A.L.R. 1142.