COURT OF APPEALS,

June, 1914.

# THE PEOPLE v. PETER J. DUFFY.

(212 N. Y. 57.)

(1.) TRIAL—WHEN TECHNICAL OBJECTION TO APPOINTMENT AND CON-
VENING ADDITIONAL TRIAL TERMS WILL BE OVERRULED.

There is no requirement that a copy of an appointment of an
extra or additional trial term by the Appellate Division, under the
provisions of section 84 of the Judiciary Law (Cons. Laws, ch. 30)
must be filed with the secretary of state. Nor is notice of such ap-
pointment required to be published by section 33 of the Executive
Law (Cons. Laws, ch. 18).

(2.) SAME.

Where a defendant indicted at a term of court, the legality of
which is undisputed, had timely notice of the term at which he was
tried, and the jury before whom he was tried was selected from a
panel summoned under and in accordance with the provisions of a
valid statute and it is not claimed that the defendant's rights were
in any manner diminished or prejudiced by an alleged omission to
comply with statutory requirements governing the designation of
the trial term, his objection to the organization of the court, of a
purely technical nature and outlining no real harm to him, even if
well made, will not be upheld for the purpose of reversing a judg-
ment.

(3.) SAME—WHEN EVIDENCE OF CRIMES OTHER THAN THAT FOR
WHICH DEFENDANT IS INDICTED WILL BE RECEIVED.

An exception to the general rule that evidence may not be given
to show that a person on trial for one crime has committed others,
permits proof of a plan or scheme to commit a series of crimes, in-
cluding the one for which the accused is being tried, and as tend-
ing to show the existence of such plan or scheme, it permits proof
of the commission of crimes other than the one charged, but so
related in character, time and place of commission as to tend to

support the conclusion that there was a plan or system which embraced both them and the crime which is charged. Some connection between the crimes must be shown to have existed in fact and in the mind of the actor, uniting them for the accomplishment of a common purpose, before such evidence can be received.

(4.) SAME—INDICTMENT OF POLICE OFFICER FOR COLLECTING "HUSH MONEY" FROM CERTAIN GAMBLING RESORTS—RECEPTION OF EVIDENCE SHOWING PREVIOUS COLLECTION OF HUSH MONEYS FROM OTHER AND SIMILAR DISORDERLY PLACES BY ANOTHER OFFICER.

The defendant, who was a police sergeant, was indicted for and convicted of the crime of bribery in receiving a bribe or collecting "hush money" as a consideration for allowing the maintenance of a gambling resort. Another policeman had for months been systematically collecting bribes or "hush money" from keepers of disorderly resorts in the same locality including the person from whom defendant was accused of taking the bribe and other witnesses whose testimony was to the effect that they had paid defendant such moneys. The resorts kept by these people were transferred to a new precinct where defendant was on duty, and coincident with this transfer defendant asked the policeman who had previously made such collections for a list of people from whom they had been made and stated his purpose to collect from them in future. This list includes the complaining witness and the witnesses whose testimony is in question. Defendant thenceforth engaged in monthly collections from the latter which are contemporaneous and in every respect similar in nature and purpose to the collection with which he is charged in the indictment. Testimony was given that each of these individuals either at or before the time when he made his first payment to defendant, was notified in substance either by the policeman who formerly collected the money or by the defendant himself that the latter in respect of these collections was to take the former's place; that the witness was "transferred" to defendant by his predecessor, or told that his predecessor was not coming around any more, and that defendant would come around after that and to "take care of him." Witnesses named on the list of resorts which came into the hands of defendant testified that for a considerable period they had made monthly payments to his predecessor. Testimony was also given that during the period ensuing the formation of the new precinct down to and in one case after the date of the bribe mentioned in the indictment they made monthly payments to the defendant,

both of which classes of payments the jury could find were bribes for police protection. *Held,* that the evidence of such other transactions tended to show that what defendant did in the way of making collections was a continuance of the same practice which had been theretofore maintained, and part of one continued system or series of events, and, therefore, the previous collections served to explain and indicate the purpose and the character and the relation- · ship of the collections which the defendant thereafter made; hence the evidence was properly received. *Held, further,* that under all the circumstances evidence of collections by defendant from others than the complaining on the list furnished him was competent as tending to show a plan or scheme to collect from keepers of disorderly resorts in that locality, including the one named in the indictment, and, therefore, as tending to prove the offense charged. *Held, further,* that under these circumstances, connected as it was by other evidence, the testimony of other payments made was competent as tending to show the purpose for which the defendant made the collection specified in the indictment.

*People* v. *Duffy,* 160 App. Div. 385, affirmed.

(Argued May 4, 1914; decided June 9, 1914.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 23, 1914, which affirmed a judgment rendered at a Trial Term for the county of New York upon a verdict convicting the defendant of the crime of bribery.

The facts, so far as material, are stated in the opinion.

*Henry W. Unger, Abraham Levy, L. J. J. Schwartz* and *Albert Blogg Unger* for appellant. The trial of the defendant was illegal, as the session at which he was tried was not a duly constituted term of court. (Cons. Laws, ch. 30; *People* v. *Sullivan,* 115 N. Y. 185; *People* v. *Nugent,* 57 App. Div. 542; *People* v. *Northrop,* 37 N. Y. 203; *People* v. *Moneghan,* 1 Park. Cr. Rep. 570; *People* v. *Veld,* 154 App. Div. 752.) The court erred in admitting in evidence over the objection and exception of the defendant the testimony of the witnesses Lennon, Quackenbush and Wilkins, as to payments made by them

to the defendant.   (*People* v. *Molineux*, 168 N. Y. 305; *People* v. *Stout*, 4 Park. Cr. Rep. 71; *People* v. *Martin*, 205 N. Y. 275; *People* v. *Harris*, 209 N. Y. 70.)

*Charles S. Whitman, District Attorney* (*Robert S. John-stone* of counsel), for respondent.   The term of court at which defendant was tried was duly and legally constituted.   (*People* v. *Sullivan*, 115 N. Y. 185; *People* v. *Youngs*, 151 N. Y. 210; *People* v. *Petrea*, 92 N. Y. 128; *People ex rel. Weick* v. *Warden*, 117 App. Div. 154; 188 N. Y. 549; *People* v. *Borgstrom*, 178 N. Y. 254; *People* v. *Ebelt*, 180 N. Y. 470; *People* v. *Herrmann*, 149 N. Y. 190.)   The evidence of Lennon, Quackenbush and Wilkins was properly admitted.   (Wigmore on Ev. §§ 2, 9, 25, 27, 43, 215, 216, 343; *People* v. *Majone*, 1 N. Y. Cr. Rep. 86; 91 N. Y. 211; *People* v. *Place*, 157 N. Y. 584; *People* v. *Shea*, 147 N. Y. 78; *People* v. *Sharp*, 107 N. Y. 427; *People* v. *Mc-Laughlin*, 150 N. Y. 365; *People* v. *Peckens*, 153 N. Y. 576; *People* v. *Van Tassel*, 156 N. Y. 561; *People* v. *Molineux*, 168 N. Y. 264; *People* v. *Doty*, 175 N. Y. 164; *People* v. *Dolan*, 186 N. Y. 4; *People* v. *Cahill*, 193 N. Y. 232; *People* v. *Marrin*, 205 N. Y. 275; *People* v. *Katz*, 209 N. Y. 311; *People* v. *Weber*, 130 App. Div. 593; *Rex* v. *Bond*, 21 Cox C. C. 252; *Rex* v. *Ball*, 6 Crim. App. Rep. 31.)

Hiscock, J.:

The defendant, who was a police sergeant, was indicted for, and convicted of, the · crime of bribery in receiving a bribe or collecting " hush money " from one Roth as a consideration for allowing the latter to maintain in the city of New York a gambling resort in defiance of the law.   Although the defendant both by his own testimony and otherwise denied the charge, the evidence as a whole presented for the jury a fair question of fact whether he was guilty or inno-

cent, and of the various reasons assigned by his counsel why the judgment should be reversed only two seem to us to require discussion and the facts will be stated only so far as may be necessary for their consideration and decision.

The first contention is that the term of court at which the defendant was tried and convicted was not legally convened and organized, and the second one is that evidence was improperly received tending to show the commission by the defendant and another of other similar crimes.    These contentions will be considered in the order stated.

In November, 1912, the justices of the First Appellate Division concededly in accordance with law appointed a series of trial terms of the Supreme Court to be held in and for the county of New York, and amongst them a term commencing on the first Monday in June, 1913, and duly assigned Mr. Justice PAGE to hold said term.    There is no question that a list of these appointments was duly filed with the secretary of state and a copy thereof published as required by section 33 of the Executive Law.

Thereafter, also concededly in accordance with law, said justices designated Mr. Justice GOFF in the place of Mr. Justice PAGE to preside at said term of court.    The justice so last designated duly convened the court and held the same until June 12th when an order was entered on the minutes of the court adjourning the term without day.    June 18, 1913, the justices of the Appellate Division made a new order, a copy of which is not printed in the record, but by which it seems permissible to assume that they appointed a new Trial Term commencing Monday, June 23d, and assigned Mr. Justice SEABURY to hold the same.    It was at the term commencing on the last-mentioned day that the defendant was tried and convicted and the complaint against the legality of the term seems to be confined to the assertion that it was not lawfully held because no

notice of the appointment of said term was or could be pub-
lished once a week for three consecutive weeks before the term
commenced, as it is asserted was necessary under the provisions
of section 33 of the Executive Law (Cons. Laws, ch. 18), which
reads: " The secretary of state must immediately publish a
copy of an appointment, filed with him, * * * in the
newspaper printed in Albany in which legal notices are re-
quired to be published * * * of a term or terms of the
Supreme Court * * * at least once in each week, for
three successive weeks before the holding of a term in pursu-
ance thereof."

It seems to be assumed by the defendant's counsel that the
justices of the Appellate Division did, and had the right to,
appoint this as a new term of court under section 84 of the
Judiciary Law (Cons. Laws, ch. 30), which provides: " The
justices of the Appellate Division in each department may fix
the times and places for holding special and trial terms therein,
and assign the justices of the departments to hold such terms
* * * ; and may from time to time make additional ap-
pointments and designations, or change or alter those already
made.

" The justices of the Appellate Division in the first depart-
ment shall on or before the first day of December in each year,
fix a time and place for holding special and trial terms of the
Supreme Court in the first judicial district, and assign the
justices to hold the same, *such designations* to be filed in the
office of the secretary of state."

We do not think that the objection to the legality of this
term is well founded for various reasons.

In the first place, there does not appear to have been any
omission to comply with the terms of the statutes governing
the subject. Section 33 of the Executive Law only, and of
necessity, requires publication of a " copy of an appointment "

which by law is filed with the secretary of state.   Section 84
of the Judiciary Law requires the filing in the office of the
secretary of state of " such designations " as said section re-
quires the justices to make on or before the first day of De-
cember in each year, and so far as I can discover there is no
law, whether it be an intentional omission or not, which re-
quired to be filed with the secretary of state a copy of an ap-
pointment of the extra or additional term which was appointed
to be held in June, and at which the defendant was tried.

But if it should transpire that through failure to discover
some other applicable statutory provision there is some flaw in
this answer to defendant's contention, another effective one
may be made on the broad merits of the proposition which he
argues.

The defendant was not indicted at the term of court referred
to, but at a preceding term, the legality of which is undisputed.
He had timely notice of the term at which he was tried, and
there is no doubt that the jury before whom he was tried was
selected from a panel summoned under and in accordance with
the provisions of a valid statute.   The court itself was ap-
pointed by the Appellate Division which had power to appoint
it, and all of its proceedings were conducted in accordance with
the due forms of law as prescribed by the Constitution and by
the statute.   It is not claimed that the defendant's rights were
in any manner diminished or prejudiced by the alleged omis-
sion of which he complains, and under such circumstances his
objection of a purely technical nature and outlining no real
harm to him, even if otherwise well made, will not be upheld for
the purpose of reversing the judgment.   (*People* v. *Youngs*,
151 N. Y. 210; *People ex rel. Weick* v. *Warden*, 117 App. Div.
154; affirmed on opinion below, 188 N. Y. 549; *People* v. *Sul-
livan*, 115 N. Y. 185, 7 N. Y. Crim. 83; *People* v. *Borgstrom*,

178 N. Y. 254, 18 N. Y. Crim. 259; *People* v. *Ebelt*, 180 N.
Y. 470, 19 N. Y. Crim. 103.)

We next proceed to the consideration of the other error
alleged by the defendant, that evidence of the commission of
other crimes by him, as well as by another person, was im-
properly admitted. The evidence thus referred to was of very
substantial importance, and if it was improperly admitted a
serious error was committed which calls for a reversal of the
judgment.

The facts necessary for the consideration and determination
of this assignment of error are as follows:

The indictment charged defendant with collecting a bribe
on or about September 3, 1912, from one Roth, as a consider-
ation for unlawfully allowing him to maintain a gambling house,
and subsequently by amendment this date was changed to
September 10, 1912. The gambling rooms maintained by Roth
were at all times situated in the sixth inspection police district.
Prior to July 1, 1912, they were also located in the forty-
third police precinct, but on said last-mentioned date they be-
came included in a new precinct defined as number thirty-
seven. The defendant was a sergeant of police assigned to
duty in this last precinct. During most of the time covered
by the evidence one Fox was a patrolman assigned to duty in
the earlier forty-third precinct.

Evidence was received, the competency of which cannot be
seriously challenged, that at about the date when the creation
of the new precinct became effective, defendant sought an in-
terview with Fox and asked him for a list of the places from
which he had been collecting, telling him that he was going to
collect from them in the future. The defendant said to Fox:
" I want a list of the places from which you have been collecting
from, that were formerly in the forty-third precinct, that go
into the new thirty-seventh precinct; I want the names of the

persons from whom you received the money; I want the time that you receive it and the amount; " that he wanted this information because he was going to collect from them in the future. Fox gave him the list of places with names and details as requested, and the defendant wrote them down in a memorandum book. This list comprised the names or designations of six individuals with the location of their respective " places " and the respective amounts and monthly dates of collections made from them. Amongst the names so included were those of Roth and of three other individuals, Quackenbush, Lennon and Wilkins, who the jury had a right to find were also keepers of gambling resorts. Then was given the evidence complained of and which may be divided into two classes. Roth and the three other persons mentioned were allowed to testify that for a considerable period prior to the formation of the new precinct they had respectively made monthly payments to Fox, which the jury could find were bribes for police protection. The other class of evidence consisted of testimony given by said individuals other than Roth that during the period ensuing the formation of the new precinct down to and in one case after the date of the bribe mentioned in the indictment they made monthly payments to the defendant, and which payments it is assumed the jury could also find were bribes for police protection.

In addition to this evidence, and as of importance in the consideration especially of that relating to the antecedent payments to Fox, testimony was given that every one of these individuals either at or before the time when he made his first payment to defendant, was notified in substance either by Fox or by the defendant himself that the latter in respect of these collections was to take Fox's place; the witness was " transferred " by Fox to defendant, or told that Fox was not coming

around any more, and that Duffy would come around after that and to " take care of him."

In the light of this other evidence I think it was perfectly proper to give evidence of the prior collections made by Fox if it was proper to give evidence of other collections by defendant than the one charged in the indictment. This evidence, in the light of the testimony concerning the change in precints, of defendant's request of Fox for a list of the collections which the latter had been making while the old precinct continued, and that the defendant was to become the successor of Fox in making these collections from people transferred into the new precinct, plainly tended to show that what defendant did thereafter in the way of making collections was a continuance of the same practice which Fox had maintained, and, therefore, the collections made by Fox served to explain and indicate the purpose and the character and the relationship of the collections which the defendant thereafter made. The entire evidence tended to show that the collections made by Fox and defendant were part of one continued series or system of events, defendant simply being substituted for Fox, and, therefore, the prior events in that series served to explain and illuminate the other and subsequent acts performed by defendant.

Therefore, we come to the underlying question whether it was proper to prove the commission by defendant of other crimes in the collection of bribes than the one for which he was indicted.

It is well established as a general rule that evidence may not be given to show that a person on trial for one crime has committed other ones. The fundamental application and purpose of this rule is to forbid and prevent the conviction of an accused person for one crime through proof that he had committed other ones, wherefrom the inference might be drawn that

because he had thus committed other offenses he was more liable to commit the one in question. (*People* v. *Shea,* 147 N. Y. 78, 98, 10 N. Y. Crim. 1.)

But as is to be expected in the case of any general rule, universal application has not prevailed, but exceptions have been engrafted which do permit evidence of the commission by the accused of other crimes than the one for which he is being tried. Some of these exceptions are familiar and they will not be enumerated. The one claimed to be applicable to this case is less familiar. It permits proof of a plan or scheme to commit a series of crimes including the one for which the accused is being tried, and as tending to show the existence of such plan or scheme it allows testimony of the commission of crimes other than the one charged, but so related in character, time and place of commission as to tend to support the conclusion that there was a plan or system which embraced both them and the crime which is charged. The evidence was admitted by the trial judge on this theory, and while the contrary is urged, I think it was fairly limited to this purpose, and by this theory and exception to the general rule the propriety of its admission is to be tested. In deciding whether it did come within the exception, it will be permissible for convenience briefly to summarize it at this point in connection with the related and explanatory testimony.

Fox for months had been systematically collecting bribes or " hush money " from a lot of keepers of disorderly resorts which included Roth and the three witnesses whose evidence has been criticised. The resorts kpt by these people were transferred into a new precinct where defendant was on duty, and coincident with this transfer he asked Fox for a list of people from whom collections had been made and announced his purpose and plan thenceforward to collect from them. This list included the complaining witness and the witnesses in question,

and the evidence discloses him thenceforth as actually engaged in making monthly collections from the latter which are contemporaneous with, and in every respect similar in nature and purpose to the collection which he is charged in the indictment with having made from Roth.

Measured by the tests of ordinary experience and common sense, there cannot be any doubt that this evidence that the defendant was collecting bribes of certain lawbreakers in his precinct in connection with the other supplementary evidence which was produced tended to establish a systematic plan for the collection of graft which would naturally include Roth who, at the same time in the same quarter and under the same circumstances, was pursuing the same kind of an unlawful business. Independent of any evidence it might naturally be believed that payment of " hush money " would not be enforced against only a part of known wrongdoers but would be enforced from all similarly situated. But in this case the other evidence makes this conclusion quite inevitable. Defendant obtains a list of former bribe givers and announces a plan thenceforth to collect from them. The list includes the person named in the indictment and certain others. As already stated, their cases in respect of this matter are in all respects precisely similar. Thereafter it appears that he is making these collections from certain persons on the list, and the inference is surely permissible that the plan already outlined is not only in existence but in actual operation and that it includes and foretells the collection for which defendant was indicted.

The force and competency which reason and ordinary logic thus give to this evidence are, I think, fully sustained by the authorities. (Wigmore on Evidence, sections 102, 304; Horton's Criminal Evidence [9th ed.], sects. 32 and 38; *Commonwealth* v. *Blood*, 141 Mass. 571, 575; *State* v. *Schnettler*, 181 Mo. 173, 189, 190; *People* v. *Molineux*, 168 N. Y. 264, 291,

305, 306, 16 N. Y. Crim. 120; *People* v. *Dolan*, 186 N. Y. 4, 10, 20 N. Y. Crim. 378.)

See, also, as tending less directly to support the admission of such testimony, *Commonwealth* v. *Scott* (123 Mass. 222, 236) ; *Hester* v. *Commonwealth* (85 Penn. St. 139) ; *Rex* v. *Fisher*, (L. R. [1 K. B. 1910] 149, 152) ; *Rex* v. *Ball* (L. R. [App. Cas. 1911] 47).

Wigmore states the rule: " The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done. A plan is not always carried out, but it is more or less likely to be carried out. The existence of the plan is always used in daily life as the basis of an inference to the act planned." (Section 102.) " When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's design or plan to do it. This in turn may be evidenced by conduct of sundry sorts as well as by direct assertions of the design. But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than mere similarity, which suffices for evidencing intent. The object here is * *· * to prove a pre-existing design, system, plan, or scheme, directed forwards to the doing of that act. * * * The effort is to establish a definite prior design or system which included the doing of the act charged as part of its consummation. * * * The result is to show (by probability) a positive design which in its turn is to evidence (by probability) the doing of the act designed. The added element, then, must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." (Section 304.)

In the *Molineux* case, Judge WERNER writing concerning the general rule excluding evidence of the commission of other crimes

than that with which the accused is charged and recognizing
the exceptions to the rule specified as one of these exceptions
evidence of a common plan or scheme, thus says: "It some-
times happens that two or more crimes are committed by the
same person in pursuance of a single design or under circum-
stances which render it impossible to prove one without proving
all. To bring a case within this exception to the general rule
which excludes proof of extraneous crimes, there must be evi-
dence of system between the offense on trial and the one sought
to be introduced. They must be connected as parts of a general
and composite plan or scheme, or they must be so related to
each other as to show a common motive or intent running
through both." And he quotes with approval Underhill on
Criminal Evidence to the effect that " generally, when several
similar crimes occur near each other, either in time or locality,
as, for example, several burglaries or incendiary fires upon the
same night, it is relevant to show that the accused, being pres-
ent at one of them, was present at the other *if the crimes seem
to be connected.* Some connection between the crimes must be
shown to have existed in fact and in the mind of the actor, unit-
ing them for the accomplishment of a common purpose, before
such evidence can be received." (p. 305.)

In the *Dolan* case, where the defendant was on trial for
uttering a forged note, evidence was permitted of the utterance
by him of a series of other notes, and Judge WERNER again
writing said in reference to this evidence: " There is also an-
other ground upon which the evidence was competent. All the
notes referred to in the evidence were made at about the
same time. In each case they were made payable to the defend-
ant and indorsed by him. During the period covered by all the
notes the defendant was endeavoring to raise sufficient funds
to meet his obligations, and in each case he used the name of
some builder with whom he had done business and with whose

affairs he was familiar. This combination of circumstances was sufficient to establish a common plan and identity of method so connected as to have a strong tendency to overcome any claim of innocent intent in the uttering of the note charged in the indictment. The evidence bearing on these other notes served to show that the defendant was endeavoring to meet his obligations as they became due, by making a fraudulent and intentional use of the names of contractors with whom he had business relations. The same general features were present in all of the transactions which seem to have been the product of one general scheme. These facts and circumstances were sufficient, we think, to bring the case within the exceptions to the general rule that excludes proof of extraneous crimes." (p. 10.)

It is especially complained that one of the witnesses was allowed to testify to payments made to defendant subsequent to the date of the one charged in the indictment. I think there are various reasons why this evidence is not subject to a valid exception and even if it should be held that it was incompetent, I think we would be required to assume that in the presence of competent evidence of all of the other unlawful payments made, the question of defendant's guilt or innocence was not materially affected by evidence of this particular payment.

I also believe that all of the evidence complained of was competent for another reason. The indictment charged and the prosecution was bound to establish that the defendant collected the money specified as the unlawful price of protecting a disorderly resort from police interference. The only direct evidence of the actual payment of the money was given by Roth who made it. It not only was not conclusively explicit as to the purpose and intent with which it was given to and received by the defendant but in addition Roth was an accomplice and a discredited witness. Under these circumstances connected as it was by other evidence I think that the testimony of other pay-

ments made to Fox and the defendant was competent as tending to show the purpose for which the latter made from Roth the collection specified in the indictment.

For the reason stated I think that the judgment of conviction must be affirmed.

WERNER, CUDDEBACK, MILLER and CARDOZO, JJ., concur; WILLARD BARTLETT, Ch. J., concurs on last ground stated in opinion; COLLIN, J., dissents.

Judgment of conviction affirmed.