■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVE JONES, Appellant. [717 NYS2d 270] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Rosenzweig, J.), rendered November 24, 1998, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The defendant was charged with the 1997 gunpoint robbery of the complainant in an alley near Jamaica Avenue, a main shopping street in Queens, at about 4:00 P.M. Before the trial, the Supreme Court issued a *Sandoval* ruling (*see, People v Sandoval,* 34 NY2d 371) which precluded the People from cross-examining the defendant about, *inter alia,* the underlying facts of three prior robbery convictions in 1980, 1983, and 1990. The defendant did not take the stand. However, his fiancée testified that she was with the defendant during the afternoon when the robbery occurred. According to the fiancée, she and the defendant were operating a three-card monte game on Jamaica Avenue at the relevant time. She was not asked any questions on direct examination about the defendant's character nor did she volunteer any such information.

On cross-examination, the prosecutor questioned the fiancée extensively about three-card monte games, her role as a lookout during the game, and her knowledge of the defendant's whereabouts during the afternoon. The prosecutor elicited the following testimony:

"Q. You don't want him to go to jail?

"A. Exactly. But I know in my heart that, I know what they said he did, he did not do it.

"Q. You know that in your heart?

"A. I know that in my heart.

"Q. How do you know that?

"A. Because he was with me the whole time. He doesn't do things like that.

"Q. He doesn't do things like that?

"A. No, he does not."

The prosecutor sought permission from the Supreme Court to cross-examine the fiancée about the defendant's prior convictions on the ground that the fiancée had presented character evidence. The prosecutor relied on the above testimony and the fiancée's responses to previous cross-examination questions which indicated that the defendant was a good person and a

good father. The Supreme Court granted the prosecutor's request over the defense counsel's objection. The prosecutor then asked the fiancée if it would change her opinion of the defendant if she knew that he had been convicted of robbery charges in 1980, 1983, and 1990. She was specifically questioned about whether she knew that the previous convictions involved gunpoint robberies.

The Supreme Court erred in permitting the prosecutor to cross-examine the fiancée about the defendant's previous convictions. Although such cross-examination may be permissible if the defendant "opens the door" by offering evidence which tends to mislead the jury, in this case, the Supreme Court's ruling permitted the People to " 'open the door' and then step through it" (*People v Gatewood,* 241 AD2d 372, 373).

"Whether the defendant's character will become an issue in the trial is the defendant's option, for until he introduces evidence of good character the People are precluded from showing that it is otherwise" (*People v Kuss,* 32 NY2d 436, 443, *cert denied* 415 US 913). A defense witness who has not testified as a character witness on direct examination may not be cross-examined about the defendant's criminal record (*see, People v Cruz,* 47 NY2d 838; *People v Nielson,* 115 AD2d 972). However, once the defendant has introduced character evidence, the People may question the defense witness about whether he or she has heard of the defendant's previous criminal acts, since such questions are relevant to the ability of the character witness to accurately reflect the defendant's reputation in the community (*see, People v Kuss, supra*; *People v Lopez,* 258 AD2d 388; *People v Yarbough,* 229 AD2d 605; *People v Coleman,* 195 AD2d 475; *People v Duhaney,* 157 AD2d 665; *see generally,* Prince, Richardson on Evidence § 4-406 [Farrell 11th ed]). The prosecution may also rebut the defendant's character evidence by calling witnesses to testify that the defendant's reputation is other than what the defendant claims (*see, People v Mancini,* 213 AD2d 1038), and the prosecution may independently prove any previous conviction for "an offense the commission of which would tend to negate any character trait or quality attributed to the defendant in [the character] witness' testimony" (CPL 60.40 [2]; *see, People v Hatfield,* 144 AD2d 944; *see generally,* Prince, Richardson on Evidence § 4-404 [Farrell 11th ed]).

Here, since the fiancée did not testify as a character witness on direct examination, the Supreme Court erred in permitting the prosecutor to cross-examine her about the defendant's criminal history. The prosecutor apparently viewed certain nonresponsive answers by the fiancée on cross-examination as an at-

tempt by the defendant to place evidence of his good character before the jury. Assuming that this was a valid argument, the testimony at issue consisted of the fiancée's private opinion, rather than evidence of the defendant's reputation in the community, and cannot properly be construed as character evidence (*see, People v Kuss, supra; People v Van Gaasbeck,* 189 NY 408). In any event, the prosecutor's cross-examination questions were improper, as they were not limited to whether the fiancée had heard of the defendant's previous convictions (*see, People v Kennedy,* 47 NY2d 196, 206; *People v Lopez, supra; People v Garrick,* 246 AD2d 478; *People v Leuthner,* 216 AD2d 327).

The Supreme Court also erred in concluding that the fiancée's testimony "opened the door" to the modification of its *Sandoval* ruling. If a defense witness testifies to facts that are in conflict with evidence precluded pursuant to a *Sandoval* ruling, the defense "opens the door" on that issue, and the witness is subject to impeachment by the prosecutor's use of the otherwise precluded evidence (*see, People v Fardan,* 82 NY2d 638; *People v Purcell,* 268 AD2d 491; *People v Velez,* 265 AD2d 162). Here, however, the fiancée did not testify on direct examination as to any facts regarding the defendant's previous criminal history. The People should not have been permitted to circumvent the *Sandoval* ruling by opening the door that the defendant kept closed (*see, People v West,* 62 NY2d 708, *revg* 92 AD2d 620).

Finally, the improper questioning of the fiancée cannot be considered harmless error (*see, People v Nielson, supra*). The record presents a close issue of identification. The complainant testified that she was robbed at gunpoint at about 4:00 P.M. and that the robber took jewelry and a package containing shoes from her. The defendant was arrested less than a half-hour later, in the same area, in a car, and neither the gun nor the complainant's possessions were recovered. Under the circumstances, the improper admission of evidence of the defendant's previous convictions was prejudicial. Accordingly, the defendant is entitled to a new trial. Bracken, J. P., O'Brien and Florio, JJ., concur.

Thompson, J., dissents and votes to affirm in the following memorandum: I would affirm. The record supports the Supreme Court's ruling that the defendant's fiancée opened the door when, after providing the defendant with an alibi by claiming he was with her the entire time, she added that he did not do "things like that," namely, commit robberies at gunpoint. This testimony was offered as evidence of the defendant's character,

and the prosecutor was properly permitted to inquire whether the witness was aware of the defendant's prior robbery convictions in an effort to impeach her credibility (*see, People v Fardan,* 82 NY2d 638, 646; *People v Purcell,* 268 AD2d 491; *People v Mateo,* 182 AD2d 644; *People v Tuckerman,* 134 AD2d 732). Further, the Supreme Court issued a proper limiting instruction when it charged the jury that it could only consider the defendant's prior convictions for the purpose of evaluating the credibility of the defendant's fiancée and not as proof that the defendant had committed the crime for which he was on trial (*see, People v Fardan, supra,* at 646-647).