97 N.Y.2d 32 (2001)
760 N.E.2d 1265
735 N.Y.S.2d 470
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
ENRIQUE ROJAS, Appellant.
Court of Appeals of the State of New York.
Argued September 12, 2001.
Decided October 25, 2001.
*33 Hiscock Legal Aid Society, Syracuse (Philip Rothschild of counsel), for appellant.
*34 William J. Fitzpatrick, District Attorney of Onondaga County, Syracuse (Mark Moody and James P. Maxwell of counsel), for respondent.
Chief Judge KAYE and Judges LEVINE, CIPARICK, WESLEY and GRAFFEO concur with Judge ROSENBLATT; Judge SMITH dissents in a separate opinion.

OPINION OF THE COURT
ROSENBLATT, J.
Defendant contends that the trial court committed reversible error by allowing the prosecution to introduce evidence of a prior alleged crime. He relies on People v Molineux (168 NY 264 [1901]), which prohibits the introduction of such evidence unless it falls within a limited number of exceptions to its rule. We conclude, however, that because defendant opened the door to this proof based on the combination of his opening statement and cross-examination of a prosecution witness, the court properly admitted the challenged proof.
While in custody in the Onondaga Justice Center jail, defendant allegedly attempted to assault another inmate. Jail personnel considered defendant to be dangerous, and reassigned him to segregated custody in the jail's "behavioral unit." To reduce the threat of injury to inmates and others, jail policy prohibited inmates in this unit from wearing fabric clothing, and instead required them to wear paper clothes. After defendant initially refused to trade his fabric pants for paper ones, several guards entered his cell to supervise his exchange of clothing. Defendant punched one of the guards in the face, dislocating his jaw. A grand jury indicted defendant for the assault on the guard and the prior attempted assault on the inmate. County Court granted defendant's motion to sever the charges and try the assault on the guard first. That case is now before us.
During pre-trial proceedings, the defense moved to preclude the prosecution from introducing proof of defendant's alleged attempted assault on the inmate, arguing that such proof constituted inadmissible propensity evidence. In response, the *35 People asserted that some explanation of defendant's segregated status and paper clothes was necessary to avoid giving jurors the impression that jail guards were mistreating him. The court ordered the prosecutor not to discuss defendant's alleged attempted assault on the inmate, and ruled that his paper clothes could be explained by telling jurors that guards were "changing [defendant's] status from within the jail[,] and that status required a change of clothing to color coordinate his status." The court further ruled that it would allow the People to explore the paper clothing issue "to some degree," but would stop short of permitting evidence that defendant was a "trouble maker."
In its opening statement, the defense did not deny striking the guard. Instead, it concentrated on the hardships of segregated detention, which defense counsel called "punitive segregation" and the "box." Defense counsel continued that defendant's "basic needs were met sometimes"; that he could not take a daily bath; that he was "afraid" and "depressed"; that he felt "threatened"; and that he felt his "life was over." Defense counsel portrayed defendant as sitting on his bed when suddenly his cell door opened, five guards surrounded him and a scuffle broke out. Defense counsel described how jail deputies "restrained" defendant, and that when they strapped his legs and arms to a chair, "he wondered if he had done something wrong." The defense narrated how defendant was bewildered by having to "wear paper again," and how he felt he "didn't do anything wrong" to deserve such treatment. Defendant's attorney concluded by imploring jurors to find that "the jailers had a duty to do what was right," and that the charge against defendant was "unfair" in light of the conditions he endured in jail.
The People's first witness was Deputy Keith Betsey, a jail officer who supervised defendant on the day of the alleged crime. Betsey testified that defendant had been made to wear paper clothes for defendant's own safety. On cross-examination, the defense elicited testimony that guards had held defendant in isolation in the "box," where he had limited recreation, wore paper pants, and was not allowed access to pens, pencils or sheets. The People's second witness, Sergeant Walter Rys, testified that, as a floor supervisor in defendant's cell block, he had come to know defendant because "he was a problem downstairs." The court overruled defendant's objection to this testimony, noting that the defense had "opened the door" in its opening statement and by eliciting details from Deputy Betsey about the harsh conditions in the "box."
*36 Rys continued his answer, explaining that defendant was in "an altercation with another inmate," whom defendant stabbed with a pencil. When defense counsel objected again, the court instructed the jury that it was important for them to understand why defendant was held in segregated custody, but that they should not "in any way consider why [defendant] was [in segregated custody] as any evidence of his guilt as to these specific charges." The court told the jury that the "purpose of this testimony [was] to give you a reason why [defendant was in segregated custody], because I think counsel has opened the door for that explanation."
At a later recess, defendant moved for a mistrial, arguing that, in violation of the court's initial Molineux ruling, the People's witnesses had improperly mentioned defendant's prior attempted assault on the inmate. The court denied the motion, finding that defense counsel had misled jurors by portraying defendant as a victim of unjust treatment in jail, and that any resulting prejudice was self-created. In its final charge, the court again admonished the jury not to consider any evidence of defendant's prior crimes as proof of guilt, and not to consider any "testimony about certain behavior of defendant while in the custody of the Justice Center" as bearing on the crime charged. The jury convicted defendant of two counts of assault in the second degree for having struck the jail guard.
After the Appellate Division unanimously affirmed the conviction, a Judge of this Court granted defendant leave to appeal. We now affirm.
Defendant contends that evidence of the prior attempted assault does not fall within any of the Molineux exceptions and, therefore, its introduction deprived him of a fair trial. Defendant ignores the fact that he initially benefitted from a favorable ruling barring introduction of the prior alleged stabbing, and then sought to utilize that ruling as a sword, to his advantage, by mischaracterizing the purpose of his solitary confinement.
Molineux, which this Court decided on October 15, 1901, is now 100 years old. The last century has added to Molineux certain refinements and procedures, but its foundation remains unchanged: a criminal case should be tried on the facts and not on the basis of a defendant's propensity to commit the crime charged. It is axiomatic that propensity evidence invites a jury to misfocus, if not base its verdict, on a defendant's prior crimes rather than on the evidenceor lack of evidencerelating to *37 the case before it. We have repeated this theme throughout the last century.[1] Indeed, courts recognized it long before Molineux.[2]
Despite its age, the Molineux rule has never become calcified or brittleits progeny have seen to that. Although many cases have fallen within the five general Molineux exceptions under which prior-crime evidence may be admitted,[3] we have made it clear, as the prosecution correctly points out, that the list is merely illustrative and not exhaustive (see, People v Alvino, 71 NY2d 233, 241 [1987]; People v Vails, 43 NY2d 364, 368 [1977]).[4]
However flexible or incomplete these categories may be, the cases have generally involved the introduction of prior crimes or bad acts as probative of a defendant's guilt. As the trial court recognized in its initial ruling, the character of the proof as probative of guilt was not convincing. Its probative nature, however, became more compellingand arguably admissible under Molineuxwhen introduced to justify defendant's confinement and the guards' actions. In this light, the challenged proof served to support the charge that defendant assaulted the guard while preventing him from performing a *38 lawful duty. It thus refuted the defense's contention that while undeservedly confined, defendant was the victim of unjustified if not unlawful restraint by the guards. Indeed, we have recognized that the prosecution, even when it did not initially seek to introduce such proof, may introduce evidence of prior crimes to refute defendants' contentions at trial (see, Alvino, 71 NY2d, at 246, supra; People v Ingram, 71 NY2d 474, 479-480 [1988]; People v Hernandez, 71 NY2d 233, 246 [1987]; Santarelli, 49 NY2d, at 248, supra).
We conclude, however, that because defendant abused the initial favorable Molineux ruling, it is not necessary for us, in this unique factual setting, to engage in needless classification by pressing the outer limits of Molineux or creating a "door opener" exception to its rule. Although the parties have cast this appeal in terms of whether the challenged evidence is admissible under a Molineux exception, we have never heldnor is it the lawthat evidence of a prior crime or bad act is admissible only if it passes through the Molineux prism. Indeed, a jury may consider defendant's prior crimes as bearing on credibility, and trial courts have discretion to allow prosecutors to cross-examine defendants as to prior crimes (People v Sandoval, 34 NY2d 371, 376 [1974]). Moreover, CPL 60.40 (1) authorizes the prosecution to prove a defendant's prior conviction if, when asked, the defendant denies it or equivocates. Similarly, if a defendant offers evidence of good character, the prosecution may independently prove any previous conviction of the defendant tending to negate the trait in issue (see, CPL 60.40 [2]; see also, People v Jones, 278 AD2d 246, 247-248 [2d Dept 2000]; Prince, Richardson on Evidence § 4-404, at 166 [Farrell 11th ed]; Mottla, New York EvidenceProof of Cases § 440, at 416-417 [2d ed]).
By allowing the introduction of proof of defendant's alleged attempted assault, the trial court simply permitted the prosecution to refute defendant's misleading contentions. Although there may be some question as to whether the challenged evidence was admissible as Molineux-type proof, we holdcontrary to defendant's contentionthat nothing in Molineux casts doubt on this ruling.
Focusing in his opening statement on the conditions he endured in solitary confinement, defendant expressly claimed that he had done nothing wrong to deserve being held in isolation. The defense, of course, had no duty to deny anything or even to make an opening statement. Having chosen to make an opening statement, however, the defense adopted a single *39 theme and repeatedly expressed it during its opening statement[5] and cross-examination of Deputy Betsey.
In its opening statement, the defense strongly suggested, if not argued, that the jury should acquit defendant because, having done nothing wrong, he was abused and mistreated, culminating in a scuffle with guards who surrounded him in his cell. The defense acted on this strategy by using its cross-examinations to further the impression that the guards were not performing a lawful duty in supervising his exchange of clothing. The defense cannot, on the one hand, claim that defendant had "done nothing wrong," and on the other hand, pervert the court's preclusion order to restrain the prosecution from refuting that claim. Having argued that defendant's confinement was unjustified, the defense converted the shield of the preclusion order into a sword by arguing that the People should not be allowed to supply that justification. Had the court allowed defendant's misleading assertion to remain unrefuted or unexplained, the jury would have been invited to acquit defendant based on the erroneous belief that he was unjustly confined and mistreated. Only in this context did the court revisit its preclusion order and, in its discretion, permit the prosecution to introduce the challenged proof.[6]
The dissent contends that by seeking to show that defendant lacked intent to injure the officer, he did not open the door to the challenged testimony. The record shows, however, that neither defendant's opening statement nor cross-examination of Deputy Betsey even touched on defendant's lack of intent to injure the jail guard. Moreover, even if defendant *40 had argued that he did not intend to injure the guard, a defendant's intent to injure is irrelevant to the crime of assault in the second degree under Penal Law § 120.05 (3). A person who seeks to prevent a police officer from performing a lawful duty is criminally answerable under section 120.05 (3) for injuring the officer, even when there is no intent to injure.
Our dissenting colleague emphasizes that defendant was merely indicted for attempted assault on the inmate, and had not been convicted of that charge. Whether defendant was convicted of attempting to assault the inmate or only charged with that crime is irrelevant to the admissibility of the challenged testimony. His alleged attempted assault on the inmate gave jail authorities a valid basis to confine him as they did. As the trial court instructed the jury, the purpose of the challenged testimony was therefore not to prove assaultiveness or propensity, but rather, to disabuse the jury of defendant's contention that there was no legitimate reason for his confinement.
The dissent's reliance on People v Betts (70 NY2d 289 [1987]) and People v Bennett (79 NY2d 464 [1992]) is misplaced. Those cases vindicated defendants' Fifth Amendment rights against self-incrimination by holding that the People may not cross-examine defendants about pending crimes to impeach their credibility. The case before us, however, does not implicate defendant's Fifth Amendment rights. The People adduced the challenged evidence by examining their own witness, and therefore did not invite defendant to incriminate himself.
Our final comment concerns the way in which the challenged evidence came in. During Deputy Betsey's testimony, the jury heard the entire discussion as to the admissibility of the prior crime. The better practice would have been for the People to ask for a sidebar conference to have the court amend its preclusion order. Instead, the prosecutor asked a question that, while perhaps not intended to reveal defendant's prior attempted assault, raised the possibility of eliciting that evidence. Similarly, the defense could have sought to air the issue outside the presence of the jury, but merely objected and continued the debate in open court. Nor did the Judge stop the proceedings and call the lawyers to the sidebar or to Chambers. Because evidence of prior crimes or bad acts carries potential prejudice, discussions about admitting such evidence are best conducted, if possible, outside the jury's presence. Nevertheless, the trial court properly admitted the evidence.
*41 Accordingly, the order of the Appellate Division should be affirmed.
SMITH, J. (dissenting).
Because evidence of a prior alleged crime was not probative of the charge for which the defendant was on trial, and because defendant was awaiting trial on that prior alleged crime, I dissent. The majority upholds the trial court's summary ruling that defendant opened the door to testimony about that prior alleged stabbing. The majority concludes that the defense attorney misled the jury in her opening statement and the cross-examination of the People's first witness and that to counter this misleading, the trial court properly permitted the People to bring out a prior stabbing of another inmate by defendant. There was no sound basis for the trial court's determination and that testimony prejudiced the defendant.
Defendant was indicted for two different incidents. The first count of the indictment charged assault in the second degree in violation of Penal Law § 120.05 (3)[1] in that on August 19, 1995, in the City of Syracuse, defendant "with intent to prevent a police officer from performing a lawful duty, caused physical injury to such police officer, to wit: Deputy Louis Messina of the Onondaga County Sheriff's Department."
Count two of the indictment charged assault in the second degree in violation of section 120.05 (7)[2] of the Penal Law in that defendant "on or about the 19th day of August, 1995 * * * having been charged with or convicted of a crime and while confined in a correctional facility, as defined in subdivision three of section forty of the Correction Law, pursuant to such charge or conviction, intentionally caused physical injury to Deputy Louis Messina."
The other three counts of the indictment related to the alleged prior crime which occurred on May 25, 1995. Count three *42 charged defendant with attempted assault in the second degree in violation of Penal Law §§ 110.00 and 120.05 (2) in that defendant attempted to cause physical injury to another by means of a dangerous instrument, a pen. Count four of the indictment charged defendant with attempted assault in the second degree in violation of Penal Law §§ 110.00 and 120.05 (7) in that while confined to a correctional facility, he attempted to cause physical injury to another. The fifth count of the indictment charged defendant with the criminal possession of a weapon in the third degree, a pen, in violation of Penal Law § 265.02 (1).
Prior to trial, defendant moved for severance of the trial of the two incidents. The trial court granted severance on the grounds that it would be prejudicial to try the two incidents at the same time. The August incident was tried first and defendant was convicted of counts one and two of the indictment. The evidence was that he struck an officer as several officers were trying to substitute paper clothing for the clothing he was wearing. Defendant took the stand and denied that he struck the officer, contending that the officer was injured during a scuffle over his pants. The defense sought to show that there was no intent on the part of the defendant to prevent the officer from performing a lawful duty or to injure the officer.
Prior to the commencement of the trial, the court ruled that the prosecutor could not introduce evidence that defendant had, on a prior occasion, stabbed another inmate. This was the charge for which defendant had been indicted but which had not come to trial.
In his opening statement to the jury, the prosecutor stated that while several deputies were attempting to get defendant to change his clothing from normal to paper clothing, defendant struck an officer "without warning, without provocation." He also stated that the jury would be told the reasons for the change in clothing. In her opening statement, the defense attorney spoke of the state of mind of the defendant and the conditions under which he had been living. She concluded by saying that there had been a scuffle, with the result that defendant was charged with assault. While she did not specifically deny in her opening statement that defendant struck the officer, this was unnecessary since by the plea of not guilty defendant denied the charge.
I do not disagree with the majority's discussion of People v Molineux (168 NY 264) or with its conclusion that there are exceptions to the Molineux rule. What is before this Court, *43 however, is a ruling made by the trial judge that the defense attorney opened the door to testimony that defendant had previously stabbed an inmate, a charge for which defendant was awaiting trial, and that this door was opened not by testimony from the defendant, but by the defense attorney's opening statement and by her cross-examination of a witness. In my opinion, the defense attorney did not open the door.
During the presentation of the People's case, the prosecutor asked a witness why the defendant was being housed in a particular section of the prison. The court overruled the defendant's objection stating, "I think you opened the door not only in your opening statement but also your questioning of the other deputy as to why this man was up there so go ahead Sergeant." The ruling was made in front of the jury and without giving the defense attorney an opportunity to argue. The witness then revealed defendant had stabbed another inmate with a pencil. This testimony was given as a fact even though the charge was still pending. The court overruled the defense objection to the answer but told the jury that it could not consider the evidence on defendant's guilt.
Subsequently, defendant moved for a mistrial. In contending that she did not open the door to testimony of an alleged stabbing, the defense attorney argued that during her opening statement she talked "about [her] client's frame of mind" and that "[she] did not believe that [was] sufficient to show that [she] opened the door."
At the close of the People's case, the defense attorney moved to dismiss the action, arguing that the People "ha[d] not proven their case beyond a reasonable doubt," particularly "[w]hen you look at the element of intent." The motion to dismiss was denied, the court ruling that intent was a question of fact for the jury.
In my view, defendant could not and did not open the door by her opening statement because an opening statement is not evidence. Moreover, jurors are constantly instructed that neither the opening by the prosecutor nor the opening of the defendant is evidence. Nor was there anything in the cross-examination of the People's first witness, Deputy Betsey, which could be construed as misleading the jury or opening the door to testimony about a stabbing. Defendant at no time suggested that he had not stabbed another inmate on a prior occasion and was in fact awaiting trial on that charge.
The Court is faced with a situation much different from the usual occurrence in which a defendant opens the door to *44 testimony about prior criminal activity. Normally, it is the defendant who opens the door by his or her testimony concerning past conduct. Thus, a defendant who testifies in a misleading fashion opens the door to a modification of a Sandoval ruling to permit questions concerning prior criminal convictions (People v Cooper, 249 AD2d 141, affd 92 NY2d 968). A defendant who testifies that he sold only fake crack cocaine opens the door to a prior conviction previously excluded in a Sandoval ruling (People v Rodriguez, 85 NY2d 586, 590). Similarly, "cross-examination of a defendant at trial, for credibility purposes, with respect to an unrelated pending charge is prohibited, except where the defendant's own assertions `open the door' to such questioning" (People v Smith, 87 NY2d 715, 718-719). A defense witness also may open the door to prior convictions. In People v Fardan (82 NY2d 638), a psychologist's testimony that he would classify defendant as a nonviolent type of individual opened the door to the prosecutor's question of whether the psychologist had been told by the defendant about a prior robbery by the defendant.
In People v Betts (70 NY2d 289), this Court held that a prosecutor could not question a defendant about a pending criminal charge if he testified (see also, People v Bennett, 79 NY2d 464). In this case, the effect of the Court's ruling is to force a defendant to testify about a crime with which he has been charged but not tried. The People should not be allowed to do indirectly what this Court has held cannot be done directly. Moreover, the majority's conclusion that the defendant sought to have the jury acquit defendant because of abuse and mistreatment and because he had been unjustly confined assumes that the jury could not or would not obey the court's instruction that sympathy could play no part in their deliberations.
The prosecutor could have responded to defendant's opening statement with testimony that defendant was in that section of the jail because of a rule infraction without indicating what the infraction was. The reason for the paper clothing could have been brought out without resort to the prior stabbing. Moreover, it is unclear whether the defendant was forced to wear paper clothing because he was a potential danger to himself or to others or for both of those reasons.
In sum, the limited issue before us is whether the defense attorney opened the door to testimony about a prior stabbing either in her opening statement or by her cross-examination. I believe she did not. The trial court's ruling served only to put *45 before the jury evidence of a pending charge for which defendant had not been tried or convicted. This was clear error. The admission of the highly prejudicial testimony regarding defendant's pending charge served only to negate consideration by the jury of the defense that the officer was injured in a scuffle and that defendant had no intent to harm or prevent an officer from performing a lawful duty.
Accordingly, I dissent.
Order affirmed.
NOTES
[1] See, e.g., People v Vargas (88 NY2d 856, 858 [1996]); People v Crandall (67 NY2d 111, 119 [1986]); People v Dales (309 NY 97, 101 [1955]); People v Dolan (186 NY 4 [1906]).
[2] See, e.g., People v Shea (147 NY 78 [1895]); see also, Larsen, Of Propensity, Prejudice, and Plain Meaning: The Accused's Use of Exculpatory Specific Acts Evidence and the Need to Amend Rule 404 (b), 87 Nw U L Rev 651, 666-669 (1993) (tracing history of propensity rule to Molineux, and before that to 16th century England); Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv L Rev 954, 959 (1933) (citing Phillips, Evidence, at 69-70 [1st ed 1814] ["in a prosecution for an infamous crime, an admission by the prisoner that he had committed such an offence at another time and with another person, and that he had a tendency to such practices, ought not to be admitted"] [internal quotation marks omitted]).
[3] See, e.g., People v Morse (196 NY 306, 310 [1909] [motive]); People v Bayne (82 NY2d 673, 676 [1993] [intent]); People v Henson (33 NY2d 63, 72-73 [1973] [absence of mistake or accident]); People v Carter (77 NY2d 95, 107 [1990] [identity]); People v Duffy (212 NY 57, 66-67 [1914] [common scheme or plan]). As "known to generations of bar review students," these five categories produced the "MIMIC rule" (Martin, Capra & Rossi, New York Evidence Handbook § 4.8.6, at 239 n 99 [1997]).
[4] For example, this Court has upheld the introduction of prior-crime evidence to show "guilty knowledge" (People v Ingram, 71 NY2d 474, 481 [1988]; People v Marrin, 205 NY 275, 282-283 [1912]), action "in concert" (Carter, 77 NY2d, at 107, supra), "character of defendant's activity" (People v Goldstein, 295 NY 61, 65 [1946]), "modus operandi" (People v Beam, 57 NY2d 241, 251 [1982]; People v Allweiss, 48 NY2d 40, 47 [1979]; People v Branch, 27 NY2d 834, 837 [1970]), and to rebut an insanity defense (People v Santarelli, 49 NY2d 241, 248 [1980]).
[5] We note that in People v Biondo (41 NY2d 483, 486 [1977], cert denied 434 US 928), the Court said that it is "conceivable" that a prosecutor may properly introduce evidence of defendant's prior crime on the strength of defendant's opening statement alone (see also, People v Shack, 86 NY2d 529, 541 [1995]). In People v Mann (31 NY2d 253, 261 [1972]), the Court permitted the People to rebut an entrapment claim that the defense raised in its opening statement (see also, People v Calvano, 30 NY2d 199, 206 [1972]). Here, however, we need not decide whether the opening statement alone was sufficient to open the door to precluded evidence, because the trial court based its ruling on the combined effect of the opening statement and the defense's cross-examination of the prosecution's witness.
[6] See, People v Davila (257 AD2d 485, 486 [1st Dept 1999], lv denied 93 NY2d 968 [upholding trial court's modification of a Ventimiglia (52 NY2d 350, 362 [1981]) ruling after defendant opened the door to evidence of prior crime]). By way of analogy, trial courts have similarly modified their Sandoval (34 NY2d 371, supra) rulings and allowed inquiry into defendant's prior crimes because of defendant's misleading testimony (see, e.g., People v Rodriguez, 85 NY2d 586 [1995]; People v Fardan, 82 NY2d 638 [1993]).
[1] Penal Law § 120.05 (3) provides: "With intent to prevent a peace officer, police officer, a fireman, including a fireman acting as a paramedic or emergency medical technician administering first aid in the course of performance of duty as such fireman, or an emergency medical service paramedic or emergency medical service technician, from performing a lawful duty, he causes physical injury to such peace officer, police officer, fireman, paramedic or technician" (emphasis added).
[2] Penal Law § 120.05 (7) provides: "Having been charged with or convicted of a crime and while confined in a correctional facility, as defined in subdivision three of section forty of the correction law, pursuant to such charge or conviction, with intent to cause physical injury to another person, he causes such injury to such person or to a third person."