Rosenblatt, J. (dissenting).
Although both the majority’s and Judge Smith’s writings are compelling, I am not fully in accord with either and therefore write separately. Apart from its treatment of the trial court’s ruling regarding defendant’s confession (the pivotal issue separating Judge Smith from the Court), I find the majority opinion persuasive.
To begin with, I join the Court in rejecting defendant’s claim that the People corrupted the truth-finding process by advancing one theory at his trial after having advanced what he asserts was an inconsistent theory at Monica Szlekovics’s trial. Further, due process does not, in my view, require the jury to embrace one of the People’s theories (that defendant killed Matos by his own hand or commanded Szlekovics to do so) to the exclusion of the other. Because the jury arrived at a unanimous determination that either was the case, it should not matter whether some jurors thought defendant pulled the trigger and others thought he ordered Szlekovics to do so. Further, I agree that defendant’s statement was voluntary and that the verdict comported with the weight of the evidence.
*455 Like Judge Smith, however, I would hold that the trial court committed reversible error by allowing the jury to hear detailed recitations as to defendant’s three unrelated murders. The majority concluded that this was an acceptable ruling, while Judge Smith calls it a Molineux error. Judge Smith adds that proof of defendant’s having committed the three other murders was not at all relevant to the truthfulness of defendant’s confession and could not possibly help the jury in determining exactly how Matos met his death.
In my view, the majority correctly decided not to characterize its ruling as a Molineux exception. As the majority points out, no one even mentioned Molineux, by name or in principle, when the court was considering whether to allow the jury to learn of the other three murder confessions (see majority op at 425 n 26). Molineux issues generally arise when the prosecution seeks to introduce proof of uncharged crimes to prove that a defendant committed the crime charged. Molineux evidence, in this sense, is often an offensive weapon employed by prosecutors to persuade the jury of a defendant’s guilt. Thus, when a Molineux exception applies,[1] the prosecution may, on its direct case, introduce evidence of a defendant’s uncharged crimes and need not wait until the defendant presents something the prosecution needs to negate (see e.g. People v Cook, 93 NY2d 840 [1999]; People v Cohen, 5 NY2d 282 [1959]). Of course, as a defensive tactic, the prosecution may introduce evidence of uncharged crimes to negate a claim of accident, mistake, or the like (see People v Rojas, 97 NY2d 32 [2001]; see also People v Ingram, 71 NY2d 474 [1988]; People v Goldstein, 295 NY 61 [1946]). Here, the prosecution did not seek to introduce proof of the three unrelated murders either to prove that defendant killed Matos or that he had a murderous propensity to do so (personally or by command). Indeed, the People fully abided by the trial court’s initial ruling that any reference to the three murders was taboo. There is no doubt that if defendant had not “opened the door,” the trial court would never have let the jury know of defendant’s other murders.
The question, therefore, is whether the court was justified in allowing proof of three unrelated murders in reaction to defendant’s having opened the door. As with most “door opening” rulings, this one requires us to examine a number of fac *456 tors, including the size of the opening and what lay on the other side of the door. Here, defendant sought to exploit the court’s preclusive ruling and create a false impression about the nature of his confession. Nevertheless, in balancing these considerations I conclude that the ruling was wrong and fell far outside any tolerable exercise of discretion.
It is not enough to say that defendant opened the door. In many trials, parties open doors to the introduction of proof. Sometimes they fling the doors wide open; other times, they open them just a crack. The trial judge’s response should be proportionate and reflect the size and nature of the opening. Here, the court’s response, to admit the three confessions, was inordinately prejudicial.
This is true for a number of reasons. I agree that the court cautioned the defense to be careful in how it went about challenging the truthfulness or reliability of the Matos confession. But I cannot agree that, to the extent he strayed at all, defense counsel strayed appreciably beyond the boundaries of the court’s preclusive order or that his transgression called for such an extreme ruling. More importantly, the prosecution did not ask for it. Ordinarily, a trial court can count on a party to protest that its adversary opened the door to proof that in fairness should be explained or refuted. The court’s unsolicited decision to allow proof of defendant’s three other murders (and thus acquaint the jury with defendant’s true “motivations” for confessing to the Matos murder) was prejudicial in the extreme.
It is a fundamental tenet of evidence law that a court, when assessing the admissibility of evidence, engage in a weighing process, balancing prejudice against probative value. Here, however, the court failed to undertake any such analysis. The record is bereft of any mention of the court’s considering possible prejudice. Indeed, in the protracted discussions before it allowed the confessions into evidence, the court never so much as mentioned the word “prejudice” or its equivalent.
Nevertheless, the introduction of the other confessions was overwhelmingly prejudicial.[2] The central question for the jury was whether defendant pulled the trigger or ordered his wife to do so—or did neither, in which case he would be guilty of *457 (intentional) murder in the second degree, as an accomplice. In this setting, the court allowed the jury to learn that defendant was (at least) a three-time murderer. No evidence could have had a more pernicious impact on the jury than defendant’s homicidal history. The admission of detailed evidence of three unrelated murders would undermine the neutrality and dispassion of even the fairest and most diligent of factfinders.
When discussing door openers, an appropriate starting point would be the case in which a defendant’s conduct at trial most obviously opens the door to the introduction of confessions that reveal uncharged crimes: if a defendant with an established history of violence testifies and purports to be a peaceable person, surely the prosecutor could explode the lie and impeach the defendant with otherwise precluded or suppressed admissions proving the contrary.[3] Even if a defendant does not testify, but falsely creates the impression of being nonviolent, the prosecution would have a strong basis to argue that the jury was being misled and that the defendant should pay a heavy price for such duplicity. Here, however, defendant neither testified nor asserted any facts in conflict with his having committed three previous murders. Defense counsel merely asked oblique questions about the circumstances of the interview. It is hard to see how these mildly suggestive queries stood to be properly refuted by proof that he murdered three other people. It is hard to see how the details of three homicides were appropriate to refute what amounted to innuendo. I cannot agree with Judge Smith that the confessions were entirely irrelevant, but I believe that their relevance was slight.
Here, the appropriate response—one proportionate to the sliver of an opening defendant created—might have been to allow the prosecution to establish that defendant revealed having committed other crimes. This would have blunted any possible claim that the police were overbearing in questioning defendant for several hours. Further, it would have neutralized defendant’s dubious suggestion that by confessing to the Matos murder he was engaging in a noble fraud to exonerate his family. Of course, the jurors might have speculated about those other crimes, but could not easily leap to the conclusion that “other crimes” meant three vicious homicides. Even if the trial court had some *458 legitimate basis to inform the jury that defendant confessed to a trio of other murders, it should have stopped there. Defendant’s confessions to these other homicides were lengthy and graphic, and the trial court improperly permitted the jury to hear every detail.
For these reasons, I would reverse defendant’s conviction and order a new trial.
Judges Ciparick, Graffeo, Read and R.S. Smith concur with Chief Judge Kaye; Judge G.B. Smith dissents and votes to reverse and order a new trial in a separate opinion; Judge Rosenblatt dissents and votes to reverse and order a new trial in another opinion.
Judgment modified by vacating defendant’s sentence and remitting to County Court, Monroe County, for resentencing in accordance with the opinion herein and, as so modified, affirmed. Appeal from County Court order dated March 11, 1999 dismissed.

. We discussed the Molineux rule and its exceptions most recently in People v Rojas (97 NY2d 32 [2001]).

. While I do not see this as a Molineux exercise, the end result, for me, is the same. Under a Molineux analysis, the test boils down to a battle between prejudicial effect and probative value. In evaluating the “door-opening” type evidence before us, the test is precisely the same, and leads, in my view, to the same result that Judge Smith reaches.

. See e.g. Harris v New York, 401 US 222 (1971); Walder v United States, 347 US 62 (1954); People v Maerling, 64 NY2d 134 (1984); People v Kulis, 18 NY2d 318 (1966).